# Hill *against* Humphreys.

Tender by a common carrier to a consignee of goods entrusted to his care must be reasonable in respect to time, place and manner, and this is a question for the jury. If the goods be tendered after the hours of business, or when the consignee is unable to receive them, such tender will not discharge the carrier.

THIS was an action of assumpsit brought in the District Court for the city and county of *Philadelphia*, by James Y. Humphreys against Hill, Fish & Abbe. The defendants were common carriers between New York and Philadelphia. The first count in the narr., on which judgment was entered for the plaintiff, charged

[Hill v. Humphreys.]

the defendants with receiving at New York, and not safely carrying from thence to Philadelphia, and delivering to the plaintiff at the latter place, certain goods, viz., 16 boxes and 35 bales of rags, and 244 bundles of paper; and with injuring the said goods through carelessness and negligence. The defendants pleaded not guilty, with leave to give the special matter in evidence.

It appeared that on the 4th of November 1835, the defendants received at New York the goods in question, to be forwarded to Philadelphia, and sent the following receipt to the plaintiff:

Marks & Numbers.
J. Y. Humphreys
Boxes J. Y. H. Paper

Union Transportation Line, between New York and Philadelphia, by the Delaware and Raritan Canal. For the conveyance of merchandise, specie, baggage, &c. &c., and insurance effected whenever required on any package to its full amount of value.

Hill, Fish & Abbe, Agents.

Office in New York, No. 31 Washington street.
Office in Philadelphia, foot of Chestnut street.

New York, November 4, 1835.

Received from J. Seymour & Sons, on board the barge Grampus, 16 boxes, 35 bales rags, and 245 bundles paper, marked as per margin, which we promise to forward (dangers of fire, breakage, leakage, and all and every other unavoidable dangers and accidents of whatever nature and kind excepted, and not holding ourselves responsible if lost, stolen or damaged, beyond the value of $200 per package, unless insured by mutual agreement) to J. Y. Humphreys, upon presenting this receipt at our office, foot of Chestnut street, south side, and paying freight therefor.

For Agents.        H. Hutchins.

Boxes 5 cts per foot. Rags 4 each. Paper 3 and 6 each.

The articles mentioned in the receipt were sent from New York in the Grampus, and arrived at Chestnut street wharf on the 7th of November, between 10 and 11 o'clock A. M. The boxes and paper were landed about noon, and two or three dray-loads sent to the plaintiff between 1 and 2 o'clock P. M. About half-past 4 o'clock, four loads of the rags were sent to the plaintiff's store, which was locked, and the clerk refused to receive them, alleging that it was too late. The draymen then took the rags back to the wharf. The defendants' store was filled with the boxes and paper, and the rags were placed upon the planked platform of the wharf; and covered with a tarpaulin and boards. That night and the next day the rain injured the rags, for which injury this suit was brought. The testimony was contradictory as to the time the rags were sent to the plaintiff, his witnesses stating that it was as late as half-past 5 o'clock, and after dark, and denying that boxes or paper were sent up that day; and the defendants' witnesses stating that it was as early as half-past 4 o'clock, and before sunset.

[Hill v. Humphreys.]

The defendants requested the court to charge the jury:

1. That the defendants were not bound by the bill of lading to deliver the goods personally to the plaintiff, but that their liability ceased when the goods were landed at the usual wharf.

2. That the defendants are not liable for any injury the goods may have sustained after they were landed at the usual wharf, and notice of their arrival given to the plaintiff.

3. That the plaintiff cannot recover for any injury the goods may have sustained after his refusal to receive them on Saturday afternoon.

4. That if the jury believe that plaintiff's drayman was instructed to watch for the rags coming out, and to bring them up as soon as landed, and he neglected to do so, then and in that case the defendants are not liable for any injury the rags sustained by being left on the wharf.

5. That if the jury believe that any boxes or other goods which came in the Grampus, were sent either to the plaintiff's store in Church alley or Commerce street on Saturday, it was sufficient notice of the arrival of the rags.

The court charged as follows:

The defendants contend that in point of law their responsibility ceased upon the arrival of the goods and their delivery on the wharf, with notice to the plaintiff; and they say that in point of fact the plaintiff had notice. The plaintiff admits that the landing of the goods on the wharf, with a legal, reasonable notice to him of the fact, would be a delivery of them; but he contends that, in point of fact, legal or reasonable notice of the landing was not given. So far as the parties have agreed upon the law of their case, there is no occasion for me to express an opinion, and I conceive that there is no real difference between them. If any notice of the landing be necessary to discharge the defendants from their responsibility, it is very certain that it must be legal and reasonable; and the plaintiff admits that a landing of the goods upon the wharf, with legal and reasonable notice of the fact, would amount to a delivery of them to him. But the plaintiff contends that what is legal and reasonable notice, is a question of law which the court should decide. I do not think so. The object of notice must be to give the consignee a reasonable opportunity to take the goods away, and to hold the carrier responsible to continue his care over them until the consignee can take them into his own custody; and if this is the reason of the rule, it is obvious that the reasonableness of the notice must depend upon the circumstances, such as the distance of the consignees' place of business from the place of landing, the bulk or quantity of the goods, and the like. It is a matter, therefore, which must be decided on the evidence.

You will therefore inquire, 1. Whether the defendants gave any notice to the plaintiff of the arrival of these goods previously to the injury done to them. 2. Whether the notice, if given, was rea-

[Hill v. Humphreys.]

sonable and fair; such as ought to throw the loss complained of upon the plaintiff, in consequence of his inattention to it. If you should think the boxes were delivered on Saturday to the plaintiff, between 12 o'clock M. and 2 o'clock P. M., then you will consider whether [taking that as notice] it would allow a reasonable time for the plaintiff to remove the rags that day. They were taken out of the barge after the boxes and bundles, and the sun set a little after 5 o'clock. There were thirty-five bundles of the rags. I submit it to you to consider whether the notice, to be reasonable, should not have been such as to enable the plaintiff to remove the goods to his storehouse by daylight. If you should find that none of the boxes were delivered that day, then the next evidence of notice is that of the sending of the four dray-loads of rags. There is a discrepancy in the testimony; but take the weight of the testimony to be, that the drays left the wharf at half-past 4 o'clock, and that, on their arriving at the store, the plaintiff had notice that his goods were on the wharf; would that be reasonable notice, and such as should subject him to all risks, if he did not send for the residue that night? Or suppose the sending of these dray-loads an offer of the defendants to deliver the whole thirty-five bales that night; the first eight or twelve of which were then offered to be delivered. It is on this view of the evidence that I suppose the second point of the defendants rests, to wit, that if the plaintiff refused to receive the rags, either from inability or any other cause, they remained on the wharf at his risk. But this proposition of the defendants cannot be maintained. If it was the right of the plaintiff to have reasonable notice of the landing of the goods, so that he might conveniently remove them to his own store, and the defendants neglected to give such notice, it would be inconsistent with that right to allow the defendants to repair their own neglect by an unseasonable delivery of the goods themselves. Is it reasonable to compel the consignee of bulky heavy goods, at any hour and under any circumstances, without any forewarning, to receive them, or, if he will not or cannot, run all risks? The law is that the carrier must not leave the goods on the wharf, even though there be an inability or refusal of the consignee to receive them. He ought to take proper care of them until delivered. The carrier has it in his power to unlade in such a manner as to allow a reasonable notice to the consignees, and by so doing avoid the necessity of storing them. But if he chooses for any reason to discharge the goods more rapidly, he must continue his care of them till a reasonable opportunity has been given to the consignee to take them.

You will then inquire, first, when the plaintiff had notice of the arrival of these goods? and secondly, whether the notice was reasonable? If you think reasonable notice was given, find a verdict for the defendants. If you think no notice was given, or that the notice given was too short, then inquire whether these rags were

damaged, and how much they were damaged, and bring in your verdict accordingly.

Defendants' first point:

1. That they were not bound by the bill of lading to deliver the goods personally to the plaintiff, but that their liability ceased when the goods were landed at the usual wharf. Answer: The plaintiff admits that the defendants were not bound to deliver the goods to him personally, and it is unnecessary, therefore, to express an opinion upon this part of the proposition. The parties agree that such was the effect of the contract. But as to the second part of this proposition, the liability of the defendants did not cease when they landed the goods on the usual wharf, unless they gave reasonable notice of the landing to the plaintiff.

2. That if the jury believe that the plaintiff's drayman was instructed to watch for the rags coming out, and to bring them up as soon as landed, and he neglected to do so, then and in that case the defendants are not liable for any injury the rags sustained by being left on the wharf. Answer: Any direction which the plaintiff gave to his agents or servants would not exonerate the defendants from their liability to see that notice was given to the plaintiff of the landing of his goods.

3. That if the defendants used reasonable care and diligence in securing these goods after they were returned, they are discharged. The court answered this proposition affirmatively, but said it was a question of fact whether they did use such care.

Errors assigned:

1. The court erred in not answering the defendants' first point fully, and in instructing the jury that the liability of defendants did not cease when they landed the goods on the usual wharf, unless they gave reasonable notice of the landing to the plaintiff.

2. In not answering the defendants' second and third points fully; and in instructing the jury that if the plaintiff refused to receive the rags, either from inability or any other cause, they nevertheless did not remain on the wharf at his (plaintiff's) risk; and in instructing them that the carrier must not leave the goods on the wharf, even though there be an inability or refusal of the consignee to receive them; but that he ought to take proper care of them until delivered.

3. In declining to answer defendants' fourth point as requested, but on the contrary instructing the jury that any direction which the plaintiff gave to his agents or servants, would not exonerate the defendants from the liability to see that notice was given to the plaintiff of the landing of his goods.

4. In not answering defendants' fifth point as requested, but on the contrary instructing the jury that if they should think the boxes were delivered on Saturday to the plaintiff, between 12 o'clock M. and 2 o'clock P. M., that then they would consider whether, taking that as notice, it would allow a reasonable time for the plaintiff to remove the rags that day.

[Hill v. Humphreys.]

*Perkins*, for plaintiff in error.

The case of *Cope* v. *Cordova*, (1 *Rawle* 203), settles the principle that the carrier's liability ceases when the goods are delivered at the usual wharf. The following cases support it: 4 *T. R.* 581; 5 *T. R.* 398; 4 *B. & P.* 16; 2 *Str.* 1236; 8 *Taunt.* 443; 8 *Cow.* 223; 4 *Pick.* 370; 4 *Verm. R.* 21; 4 *Bing. N. C.* 314. By the terms of the receipt, the goods were to be delivered at Chestnut street wharf.

*W. Smith*, contra.

The case of *Eagle* v. *White*, (6 *Whart.* 505), decides the principles of this case fully. Tender by the carrier must be at a proper time, manner. and place; and this is a question for the jury. Here the plaintiff's place of business was closed when the goods were sent up, and it was too late to stow them away, as all his hands had gone.

The rule that there must be reasonable notice to the consignee of the arrival, applies to cases of commerce between different States. 4 *Pick.* 371; 3 *Louis.* 225; 17 *Wend.* 305; 4 *Bing. N. C.* 314; *Story on Bailm.* 347. The responsibility of the carrier continues until there be due delivery. 26 *Wend.* 591.

The opinion of the Court was delivered by

SERGEANT, J.—This is not a question whether a delivery at the wharf, which is the usual place of delivery, with notice to the consignee, is a delivery to the consignee, as was ruled in *Cope* v. *Cordova*, (1 *Rawle* 203), in relation to goods coming from a foreign port. For here the carrier undertook to deliver the goods to the consignee, who refused to receive them, and, being taken back, they were damaged by the rain. The question is, whether the consignee was bound to receive the rags; and that depends upon whether the delivery was reasonable in respect to time, place and manner. This was a question for the jury, depending on all the circumstances attending the transaction. If the goods were tendered late in the day, at the termination of the hours of business, and when the consignee had dismissed his hands, and was incapable of receiving and putting away the goods, then the delivery was unreasonable as to time, and the consignee was guilty of no fault or laches in refusing them. The duty of the carrier in such case was to take them back, and keep them safely under all his responsibilities as carrier, in a store, or under safe custody. Such a delivery did not discharge him from his liability as carrier, and the damage which ensued must be borne by him. All the circumstances were for the consideration of the jury, and were left to them to determine on the reasonableness of the notice of delivery. We therefore see no error in the charge of the court.

Judgment affirmed.