# Hemphill *against* Chenie.

The responsibility of a carrier upon the Ohio river does not cease upon the delivery of goods on the wharf, and notice given to the consignee; but it is his duty to attend to the actual delivery.

There is an implied engagement by a consignee with the public, that he will be vigilant and careful in receiving and forwarding goods entrusted to his care; and upon his refusal to receive goods consigned to him, he would be liable to an action by the owner for any loss which might be occasioned thereby.

ERROR to the District Court of *Allegheny* county.

This was an action by A. L. Chenie & Co. against Sharp Hemphill, the owner of a keel-boat upon the Ohio river, to recover the price of a box of dry-goods delivered to him at Pittsburgh, and consigned to Rowland, Smith & Co., Louisville. The court below thus stated the case and instructed the jury, who found a verdict for the plaintiffs for $447.61.

GRIER, (President).—The plaintiffs are merchants residing in the west. They purchased goods in Philadelphia, which were

[Hemphill v. Chenie.]

sent in the usual manner by canal to Pittsburgh, and (it being low water in the Ohio river) they were sent to Louisville by a keel-boat, to be conveyed thence by steamboat to their place of destination, the place of the plaintiffs' residence. Goods thus sent are directed to some known forwarding merchants, as consignees, at each point where any one stage of transportation ends and another begins. Pittsburgh and Louisville are two points of this description. The defendant was owner of a keel-boat, which, during the low water of last fall, was engaged in carrying on the Ohio river between this place and Louisville. The plaintiffs claim the value of a box of goods delivered to the defendant's boat to be carried to the port of Louisville, and to be delivered to Rowland, Smith & Co., forwarding merchants of that place. The defendant contends that the goods were delivered according to contract: this the plaintiffs deny; and this forms the issue to be tried.

The clerk of the defendant, who was the agent in receiving and delivering the goods sent by the boat, swears that this box of goods was conveyed safely to Louisville, and deposited on the wharf there; and that he gave notice to the consignees in the forenoon that the boat had arrived, and was unloading; and about 3 o'clock in the afternoon that the goods were on the wharf. Six witnesses have been sworn by the plaintiffs, the consignees and their clerks, who all deny the receipt of the goods by the consignees, or the receiving of any notice of their arrival. Two of the clerks of the consignees swear that the first notice of the arrival of the goods was when the defendant's clerk called with his demand for the freight; and the receiving clerk swears that he immediately went to the wharf in search of this and another box of goods consigned to them; that he found the other box of goods, but this one was gone, or at least was not to be found, and never was received.

Although it might admit of considerable doubt whether any notice was given to the consignees before the loss of these goods from the wharf, yet it will be necessary for us to examine this case in view of a different state of facts. If the goods had been actually received, or put into the actual care or possession of the consignees or their servants, there could be no doubt that that would be a fulfilment of the defendant's contract, whether the delivery were made on the wharf or at the warehouse of the consignee. But the defendant's clerk does not himself swear that the consignees ever actually received the goods, or that the box was put into the actual possession of the consignees or their agents. But it is contended that, according to the custom of the port of Louisville and the other cities on these western rivers, the depositing of goods on the wharf and giving notice to the consignee, constitute a sufficient delivery in law, whether the consignee actually receives the goods or not. In other words, the care and responsibility of the carrier cease, the moment he has deposited goods on

[Hemphill v. Chenie.]

the wharf and sent notice to the consignee, and this whether the consignee refuses or neglects to receive them or not. If, in such cases, the carrier may abandon the goods on the wharf, and the property of the distant owners thus be left as a subject of plunder to the first finder, it must be admitted that the subject is one of considerable interest to those whose property is committed to the chances of transportation on these western waters, and has necessarily to pass through the hands of so many different carriers and consignees.

It must be apparent to every one, that however much steamboat men and other carriers on our rivers may affect the diction and phraseology of maritime cities in their bills of lading, insurances, &c., yet that a hasty or indiscriminate application of our commercial and maritime code of laws and customs might not be convenient or judicious. Goods may be " shipped" on board steamboats and canal-boats from the " port" of Pittsburgh to the " port" of Louisville; and yet it might happen that the rules of commercial law, which regulate trade on the ocean and freight shipped from Liverpool to Philadelphia, might be very inconvenient of application to our western waters. Hence, in *Cope* v. *Cordova*, (1 *Rawle* 103), which decides that " the liability of the ship-owner ceases when the goods are landed at the usual wharf," many good reasons are given why such a rule exists in the trade between two maritime cities, which cannot apply to this shifting transportation from point to point on our western waters; and the learned Judge who delivers the opinion of the Supreme Court in that case, is careful to observe that they do not intend by that decision to interfere with the law that regulates the internal or coasting trade, or at all to dissent from the case of *Ostrander* v. *Brown*, (15 *Johns.* 39).

It is true, we have it in evidence that the custom of trade at Louisville, and at all the ports on the river, is, not that the carrier shall deliver at the warehouse of the consignee, but on the wharf; and it is true also that every well-established custom of trade is presumed to be known to and incorporated by the parties in their contracts. But what is the custom as proved in this case? It is, that the carrier gives notice of the arrival of his vessel at the wharf to the consignee, and usually before the goods are unloaded the clerk or drayman of the consignee is there ready to receive; if not, when the goods are deposited on the wharf, the consignee is again notified of the fact, and always sends and takes them away, as very few instances have been known when the goods are not immediately taken possession of by the consignee. A case rarely happens, except when the consignee denies (as he does in this case) that he has received notice; or, having received it, has forgotten it, or was too busy to attend to it.

The witnesses have not testified to any settled custom in case the consignee refuse or neglect to send and take possession of the

goods on the wharf. One witness states that in one instance, where the consignee did not attend to receive possession of the goods and take them under his care, after notice given that they had arrived, he abandoned them on the beach; but says further that he will not testify that to be the custom in such cases. Another witness swears that it is " usual to hold on to the goods till the consignee sends for them ;" " and if the consignees do not call for the goods by sun-down, they are stored in a warehouse, where the consignee may receive them on paying the freight." Custom or no custom, that should be the conduct of every prudent and honest carrier. It must be recollected that the consignee is not bound to receive the goods where he is not owner; he is often a stranger to the owner. Could an honest man, who has the goods of a distant owner in his possession, be justifiable in abandoning them to thieves, or standing by and suffering them to be stolen, as must have been the case here, under pretence that he has sent word to the consignee, who is not bound to receive them, that the goods are there?

The carrier should insist upon an acceptance or refusal of the goods by the consignee; he should tender the goods to the consignee; if the consignee refuse or neglect to accept possession of them, the course of the carrier is plain: let him store them in a warehouse, with orders to deliver to the consignee on payment of freight and expenses. When he does so, his duty is discharged, and his liabilities as carrier cease; and not till then. A contrary doctrine would leave merchandise transported on our western waters the mere prey of thieves and robbers. The hands of the boat may plunder the goods with perfect impunity, and relieve the owners from responsibility by swearing that the goods were on the wharf; and if he did not come for them, it was his own fault. And to what purpose that the consignees swear they received no notice? It will be argued, as in the present case, that an affirmative witness is worth a dozen negative witnesses. If the defendant's agents had in this case put the goods into the actual care or possession of the consignees on the wharf at Louisville; or if, upon the consignees' refusal or neglect to take the goods out of his care, they had deposited them for safe-keeping in some warehouse, or other safe place, they should not be made liable. But if you have no evidence of such facts; if the goods were stolen either before defendant's boat left the wharf, or were abandoned there before any acceptance or receipt of them by the consignees, you should find a verdict for the plaintiffs for the value of the goods lost. The depositing the goods on the wharf and sending notice to the consignee, even taking the testimony of the defendant's agent and witness to be true, do not constitute a delivery, constructively, if the goods were not actually accepted or received into the possession of the consignees, or their agents or servants. In conclusion, I would remark, in the words of

[Hemphill v. Chenie.]

ROGERS, J. (6 *Whart.* 519) : "If we once permit carriers to relieve themselves from the consequences arising from their or their agents' negligence, there will be no want of pretences and excuses for that purpose, proved, as they can readily be, by the oaths of the persons whose fault or fraud has caused the loss.' To avoid all temptations of this kind, the rule which places common carriers on a different footing from other bailees, has been wisely adopted, and must be firmly enforced. The great and increasing extent of our internal trade renders all such questions extremely important; and there is great danger in relaxing the ancient rules, which must end in producing uncertainty and of course numerous and perplexing controversies."

*Black*, for plaintiff in error, cited 3 *Watts & Serg.* 21 ; 4 *T. R.* 542 ; 5 *Ib.* 389 ; 6 *Whart.* 517 ; 15 *Johns.* 42.

*Scully* and *Wylie*, contra, cited 1 *Johns.* 577 ; *Ros. Ev.* 85; 1 *Rawle* 203 ; *Story on Bail.* 453, 532, 542 ; 2 *Kent Com.* 604 ; 2 *Barn. & Ald.* 702.

The opinion of the Court was delivered by

ROGERS, J.—The facts and principles which govern the case are accurately stated by Mr. Justice Grier, and we affirm the judgment for the reasons given in the charge. In answer, however, to one remark, I must be permitted to say, that it is by no means clear that where a consignee neglects or refuses to receive goods consigned to him, without cause, the owner is without remedy ; for I must dissent from the position that a consignee is not bound ordinarily to receive goods consigned to him. Has a consignee a right arbitrarily to refuse a consignment by a distant owner, who trusts to his implied engagement with the public that he will be vigilant and careful in forwarding goods entrusted to his care ? A cumulative remedy is no anomaly in the law; and the safety of our internal trade, which is becoming of such immense importance, requires a strict accountability from consignees as well as carriers; and can it be tolerated that agents who are indispensably connected with it, may at pleasure shrink from a responsibility which they have voluntarily assumed, and which the commercial world have a right to suppose they will faithfully and diligently perform ? In the case in hand, it is admitted that the owner has lost his property from the default of the carrier or consignee, or both; and justice and fair dealing require that his remedy should not be even doubtful. It will not do, where the exigency of the case requires it, to allow consignee or carrier respectively to shift the responsibility from themselves on the shoulders of the other. Thus, in this case, if the owner had brought suit against the consignee, he would be met by the defence that the carrier was liable ; and between these conflicting interests the injured party would have no

[Hemphill v. Chenie.]

redress whatever. But, be this as it may, the carrier in the first place is answerable to the owner, and he can only discharge himself from liability by the most clear and decisive proof of an actual delivery to the consignee. An offer to deliver, as is held in *Ostrander* v. *Brown*, (15 *Johns.* 42), does not relieve him from the care and custody of goods which he has under his charge.

The testimony was properly excluded, because, as is truly said, the objection assumes the matter in issue, viz., which was liable, the consignee or the carrier. Besides, the liability of the consignee is contingent, which forms no objection to the competency of his testimony.

Judgment affirmed.