## Shenk *et al. versus* The Philadelphia Steam Propeller Company.

1. *It seems* that the obligation of common carriers by railway is simply to transport the goods to their destination, to deposit them without delay and without additional charge in their warehouse until the consignee has a reasonable time to remove them. They are not required as carriers by wagon to deliver at the place of business of the consignee, nor as carrier by water to give notice of their arrival.

2. The responsibility of the carrier by rail should last until delivery to the consignee, or until the responsibility of another party begins.

3. Transporters may be both carriers and warehousemen; they cease to be carriers when they have placed the goods in their depot or other safe warehouse. Their responsibility as warehousemen is but for ordinary neglect.

4. A carrier must take care at his peril that the goods are delivered to the right person, delivery to a wrong person renders him liable, even though innocently and by mistake.

5. For such wrongful delivery trover may be maintained.

6. The carrier must show that the person to whom he delivered the goods was authorized by the owner or consignee to receive them.

7. Goods were transported under a bill of lading from New York to Philadelphia, and landed at the transporters' wharf. After landing they were lost. Although the liability of the transporters as common carriers may

[Shenk *v.* Philadelphia Steam Propeller Co.]

have ceased, they would be liable as bailees, unless they proved that the goods had been lost without their negligence.

8. Non-delivery is primâ facie evidence of want of ordinary care, and throws the burden of proof on the bailee.

9. The acceptance by a man of goods from a porter is not evidence to constitute the porter his agent, so as to charge him with goods received by the porter to deliver and lost by the way.

January 4th 1869.   Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.   WILLIAMS, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 53, to July Term 1867.

This was an action on the case, commenced March 26th 1866, by Benjamin F. Shenk and others, trading as Shenk, Bausman, Carpenter & Co., against The Philadelphia Steam Propeller Company.

The declaration averred that the defendants were common carriers by steamboats, between New York and Philadelphia; that the plaintiffs delivered to them 126 bales of cotton to be safely carried from New York to Philadelphia, there to be delivered to the plaintiffs; that the defendants did not safely carry the cotton to Philadelphia, and deliver it to the plaintiffs, but so negligently conducted themselves that the cotton was wholly lost to the plaintiffs.

The plaintiffs gave in evidence three bills of lading, one as follows, viz. :—

"New York, November 8th 1865.

Received from J. A. Raynor on board D. Line, one hundred and four bales of cotton, marked P. A., which we promise to deliver upon conditions and exceptions expressed on back of this receipt                               to Bitner & Bros.

Lancaster, Pa.

Care of B. Bros. 1015 Market street, Philada. at our office in Philadelphia."

The 2d and 3d respectively were dated November 13th and 15th, were for 5 and 17 bales, and were otherwise the same as the 1st, except the delivery was to be "to Bitner & Bros., Lancaster, Pa., at our office, Philadelphia."   Part of the conditions endorsed on the receipt were, "The goods must be taken by the consignee immediately after notice of the landing of the same on the wharves, or the company will not be responsible for any loss or damage that may happen to them.   No damage allowed without being notified on receipt of the goods."   The plaintiffs alleged that 9 bales had not been delivered, and claimed damages for the loss.

By the evidence it appeared that the plaintiffs were cotton manufacturers in Lancaster; that Bitner & Brothers were transporters by railroad between Philadelphia and Lancaster, their place of business being at Lancaster; and that A. D. Atchinson

had a warehouse at No. 1015 Market street, Philadelphia, at which Bitner's cars were loaded.

It further appeared that the cotton arrived at Philadelphia, and was landed on defendants' wharf.

There was evidence on the part of the plaintiffs that 9 bales had not been received. Joseph Farmer, a master drayman, loaded the cotton on his drays from the wharf, and took charge of its delivery, and James Sweeney was in Farmer's employment in transporting the cotton from the wharf to Atchinson's warehouse. William M. Baird was agent of the defendants at the wharf. Atchinson paid the freight on different bills for the whole 126 bales as if delivered,—under protest that 9 bales had not been received. On one of the bills was endorsed " Received 117 bales instead of 126 bales. A. D. Atchinson." On another bill was endorsed,—

".Philadelphia, November 16th 1865.

Joe Farmer told me to say, that Mr. Baird said, he would rectify any mistake there was in the delivery.

JAMES SWEENEY."

There was evidence that Atchinson refused to sign receipts (which were brought from the defendants' agents by Farmer) for all the cotton, alleging that it had not all been delivered.

There was conflicting evidence as to the fact of the loss and notice on behalf of the plaintiffs to the defendants of the loss; and as to whether Farmer was the agent of the defendants or the plaintiffs. Amongst other evidence, there was evidence that Farmer had frequently delivered goods at the warehouse of Atchinson.

The defendants submitted the following points :—

" 1. If the jury believe that the employment of Farmer to deliver goods at Atchinson's warehouse had been heretofore and was in this instance acquiesced in by Atchinson, the delivery by the defendants to Farmer was a delivery to the plaintiffs, and the plaintiffs cannot recover.

" 2. If the jury believe the 126 bales of cotton arrived at Philadelphia, the contract between the plaintiffs and the company has been fulfilled, and the plaintiffs cannot recover.

" 3. If the jury believe the plaintiffs or their agents did not notify the company of the deficiency in the number of bales received by them until two or three weeks after it was known to them, the plaintiffs cannot recover."

The court (Hare, J.) charged the jury :—" The points on which I am asked to instruct you by the defendants are—1st. If the jury believe that the employment of Farmer to deliver goods at Atchinson's warehouse had been heretofore and was in this instance acquiesced in by Atchinson, the delivery by the defendants

to Farmer was a delivery to the plaintiffs.  I decline to instruct you in the terms of this proposition.  I do say, however, that if the contract was in fact that Farmer should deliver the goods to Atchinson as the agent of Atchinson or the agent of the plaintiffs, the defendants would not be responsible for any loss from the want of proper care by Farmer or those whom he employed.  On the other hand, if this delivery by the defendants, forming a link in the transit of the goods, was a duty which they undertook to perform by themselves or through their agents, and not a matter undertaken by their agents in a new capacity as agents for Atchinson & Co., the defendants would be answerable for any neglect in the performance of that duty.  Whether Farmer and the draymen under him were acting as the agents of Atchinson & Co., or as the agents of the defendants in carrying the goods up from the wharf, is a question which I will leave to you as a question of fact.  If they were acting for Atchinson & Co., then the responsibility rests on them; if for the Transportation Company, they are answerable.

" *The 2d point is*, if the jury believe the 126 bales of cotton arrived at Philadelphia, the contract between the plaintiffs and the company has been fulfilled, and the plaintiffs cannot recover. Such a contract would have been fulfilled, that is to say, the contract in this bill of lading would have been fulfilled by landing the goods safely on the wharf and where the plaintiffs might come and get them.  But if the defendants undertook the farther duty of carrying the goods up and delivering them to Atchinson & Co., then they would be responsible for the fulfilment of that farther duty; that is to say, if they undertook it.

" *The 3d point is*, if the jury believe the plaintiffs or their agents did not notify the company of the deficiency in the number of bales received by them until two or three weeks after it was known to them, the plaintiffs cannot recover.  This brings up a point to which I have already called your attention.  You will recollect that Walton stated in his evidence that Martin, who came down to make the demand or to complain of the loss of the goods, did not come until some time in the month of December; a month perhaps after these goods were missing, that is to say, after the failure to deliver them, and it is certain that such an omission or delay would be, if unexplained, a very strong circumstance in the case in favor of defendants.  Because a man who fails to notify another who is acting for him under such circumstances that he has not got all he ought to receive, that the other has not delivered all the goods he ought to have brought, not only may create a just doubt whether his complaint is true, but necessarily puts the other party in a difficult position by not apprising him in time to ascertain how the truth may be and redress the mistake, if a mistake has been committed.  But I understand the defendants

[Shenk *v.* Philadelphia Steam Propeller Co.]

to contend that the law goes further than this, and that they are not responsible unless notice was given at once by the consignee.

" I decline to instruct you that the delay in giving notice would be a bar to the plaintiffs in view of all the circumstances of this case.    Still, I call your attention to it as a circumstance, but you may, at the same time, recall certain portions of the evidence tending to show, that although no formal demand was made or notice given, the defendants were apprised that the plaintiffs had not received all the goods.

" For when the draymen returned, on the 14th or 15th of November, they told Farmer, who was acting as agent for the defendants, that Atchinson & Co. refused to sign the receipts, on the ground that all the bales had not been delivered.    There is also evidence that Atchinson, in paying the freight, which he did as if all the bales had been received, made a memorandum upon the bill that ' Joe Farmer declared that Baird had said that he, Baird, would make it all straight if there was any mistake.'    I am not bound to express an opinion whether this, being hearsay, was any evidence of what Baird said, but his making such a memorandum would naturally attract attention and excite inquiry.    And there is evidence from what Farmer himself testified, that Farmer knew at the time that Atchinson & Co. complained that the cotton had not all been received.    As a general rule, notice to an agent is notice to the principal.    If Farmer was acting in this matter as agent for the defendants, then notice to him that the cotton had not arrived, would be evidence of notice to them, to enable them to take measures for their protection.    It is, however, undoubtedly true that no formal demand was made for the cotton until a month after the loss, and this you may consider in connection with the other circumstances of the case."

The verdict was for the plaintiffs for $2349.40.

In the Supreme Court the defendants assigned for error,

1 and 2.  The answer to their 1st point.

3 and 4.  The answer to their 2d point.

5 and 6.  The answer to their 3d point.

*J. E. Gowen,* for plaintiffs in error.—The contract was complied with by delivering the cotton at the defendants' wharf in Philadelphia : Penna. Railroad *v.* Schwarzenberger, 9 Wright 208. The question therefore is, whether landing goods at the wharf, and delivering them to the draymen for further transportation, discharged the defendants : Nutting *v.* Conn. River Railroad, 1 Gray 502 ; Norway Plains Co. *v.* Boston and Maine Railroad, Id. 271 ; Jennison *v.* Camden and A. Railroad, 4 Am. Law Reg. 234 ; Garside *v.* Trent. Proprs., 4 Term R. 581 ; Van Santvoord *v.* St. John, 6 Hill (N. Y.) Rep. 157 ; Farmers and Mechanics'. Bank *v.* Champlain Trans. Co., 18 Verm. R. 140, 23 Id. 209.

10 P. F. Smith—8

Notice of non-receipt was necessary: Weir *v.* Express Co., 5 Philad. R. 353.

*J. W. Latta* and *J. E. Latta,* for defendants.—A delivery may be made at a wharf, depot or warehouse, or by the carrier's agent to the consignee: Tanner *v.* Oil Creek Railroad, 3 P. F. Smith 411.   Goods to be forwarded to a destination beyond the transporter's road must be delivered to the other line before responsibility of the first carrier ceases: Hill *v.* Humphreys, 5 W. & S. 128; Cope *v.* Cordova, 1 Rawle 203; Hemphill *v.* Chenie, 6 W. & S. 62, 2 Kent's Com. 604.   To limit their liability by notice, the carrier's rules must be clear and unambiguous: C. & A. Railroad Co. *v.* Baldauf, 4 Harris 67; Laing *v.* Colder, 8 Barr 484; Bingham *v.* Rogers, 6 W. & S. 495.   The question of Farmer's agency was properly submitted to the jury: Philad., W. & Balt. Railroad *v.* Cowell, 4 Casey 324; Moore *v.* Patterson, Id. 505.

The opinion of the court was delivered, January 11th 1869, by SHARSWOOD, J.—It is unnecessary to consider whether the plaintiffs in error would have been liable for the loss of the cotton for which the action was brought, if their undertaking had been to forward it from the terminus of their own route to some other ultimate point of destination.

By the bills of lading the place of delivery was expressed to be "at their office in Philadelphia." The words inserted "to Bitner & Bro., Lancaster, Pa., care of B. Bro., 1015 Market St., Philada.," as in the bill of November 8th 1865, or "to Bitner & Bro., Lancaster, Pa.," as in the two other bills, can only be regarded as a designation of the consignees to whom or to whose agent the delivery was to be made.

When the responsibility of a common carrier of freight ends, has been the subject of much discussion and some contrariety of opinion.   Judge Story states the rule *to be clear that carriers are bound to give notice of the arrival of goods to the persons to whom they are directed and within a reasonable time:* Story on Bailments, § 543.   The American cases are not very harmonious, but perhaps the current of them sustains him.   There are some qualifications of the rule growing out of the different kinds of carriage which are beginning to be generally recognised.   A highly respectable court in New Jersey states, as the result of all the cases, that "the obligation of common carriers by railway is simply to transport the goods to the place of destination, to deposit them without delay and without additional charge in their warehouse until the owner or consignee has a reasonable time to remove them.   They are not required, as carriers by wagon, to deliver at the door or place of business of the owner or con-

signees, nor as carrier by water to give notice of their arrival. Their route being confined to the track of their road renders the first impracticable without the use of wagons, which is not part of the contract, and the usual certainty of the arrival of the trains renders the latter unnecessary, and by the usage of business it is not required:" Morris and Essex Railroad Company v. Ayres *et al.*, 5 Dutcher 393. These distinctions seem founded in reason, and may perhaps reconcile the apparent conflict of authorities, and settle down at last as the true expression of the rule on this important subject. The responsibility of the carrier ought, it would seem, to last either until delivery to the owners or consignees, or until that of some other party begins. Transporters of merchandise may be both carriers and warehousemen, and they cease to be the former when they have placed the goods they have carried in a depot of their own or any other safe warehouse. Their responsibility, as warehousemen, is however only for ordinary neglect: Chicago Railroad Company v. Warren, 16 Illinois 502; Illinois Central Railroad Company v. Alexander, 20 Id. 23.

The New York Civil Code lays down a much more stringent rule, for it provides, sect. 1105, that "if, for any reason, a carrier does not deliver freight to the consignee or his agent personally, he must give notice to the consignee at its arrival, and keep the same in safety, upon his responsibility as a carrier, until the consignees have had a reasonable time to remove it."

We are not without decisions of this court which illustrate the subject. In Cope v. Cordova, 1 Rawle 203, it was held in the case of a vessel arriving from a foreign port, that the liability of the shipowner ceases when the goods are landed at the usual wharf; but the reasons adduced in support of it do not apply to the internal or coasting trade, and the court expressly disclaim such an application. Accordingly it was decided in Hemphill v. Chenie, 6 W. & S. 62, that the responsibility of a carrier on the Ohio river does not cease upon the delivery of goods on the wharf. In this case, as well as in Eagle v. White, 6 Whart. 505, it does not appear to have been considered that even notice to the consignee would relieve the carrier, but that there must be a tender made " at a proper time, in a proper manner and at a proper place. If the tender is wanting in any of these essential requisites, his responsibility as *carrier* still continues." To the same effect is Hill v. Humphreys, 5 W. & S. 123. In conformity to the qualification which I have before adverted to as recognised in some of our sister states, this court has also determined, in McCarty v. The New York and Erie Railroad Company, 6 Casey 247, that when goods have been carried to their place of destination, and then deposited in the carriers' warehouse, to await the owner's convenience in taking them away, the carriers are only subject in

respect to such goods to the responsibilities of warehousemen, not to those of common carriers. The subject was also considered in Tanner *v.* Oil Creek Railroad Company, 3 P. F. Smith 411, and the opinion expressed that it is the duty of the carrier to give notice whenever the consignee is known.

In the case before us, indeed, the transporters clearly recognise this to be their duty; for they expressly declare in the endorsement on the bill of lading, that "the goods must be taken by the consignee immediately after notice of the landing of the same on the wharves, or the company will not be responsible for any loss or damage that may happen to them." However it might be if there was no such stipulation, it is very plain that in their own view their responsibility as carriers did not terminate until notice.

It is not pretended that they deposited the goods on their arrival in any warehouse either of their own or any other person, or that they gave notice to the consignees or owners, but instead of that they delivered them to a master drayman, who employed subordinates to carry them to 1015 Market street, the place named as the store of the consignees. Nine of the bales were never delivered, as the verdict settled.

The learned judge below left it to the jury to say whether the master drayman was the agent of the consignees, and they have found that he was not. Whatever doubt may hang over other questions as to the termination of a carrier's or other bailee's responsibility, there is one point which is indisputable, that he must take care at his peril that the goods are delivered to the right person, for a delivery to a wrong person renders him clearly responsible: Story on Bailments, § 543; Garrett *v.* Willan, 5 B. & Ald. 53; though innocently and by mistake, as when it is made upon a forged order: Lubbock *v.* Inglis, 1 Stark. (83), 104; Powell *v.* Myers, 26 Wend. 591. Such a wrongful delivery has been held in many cases to amount to a conversion, and that trover may be maintained: Stephenson *v.* Hart, 4 Bing. 476; Syeds *v.* Hay, 4 T. R. 260; Devreux *v.* Barclay, 2 B. & Ald. 702; Youl *v.* Harbottle, Peake N. P. Cases 149; Stephens Nisi Prius 981. The carrier must show that the person to whom the goods were delivered as agent was duly authorized as such by the owner or consignee to receive them, for if he delivers to any but the owner, consignee or agent, he does so at his peril: Adams *v.* Blankenstein, 2 California 413. Either then the master drayman was a mere stranger, voluntarily assuming to accept and carry the goods to the consignee, in which case delivery to him was wrongful; or he was the agent of the carriers, and they assumed the same duty, and must be considered as undertaking to carry them from their wharf and deliver them to the agents of the consignee: Smith *v.* Nashua and Lowell Railway Company, 7 Foster 80. Admitting,

which is the most favorable view which can be taken of their case, that their responsibility as common carriers ceased when the goods were landed at their office, they would still be liable as bailees, unless they proved that the goods had been lost without negligence on their part or that of their agents or servants; for it has been held by this court in Verner *v.* Sweitzer, 8 Casey 208, that a private carrier or ordinary bailee for hire, in case of the non-delivery of goods intrusted to him, is liable therefor in the absence of proof of ordinary diligence, and that the fact of a non-delivery is primâ facie evidence of want of ordinary care, and throws the burden of proof on the bailee. These principles show that the plaintiffs in error have no good reason to complain of the charge of the court below.

The refusal to answer as requested in their 1st point forms the subject of the 1st and 2d assignment of error. The 1st was, "If the jury believe that the employment of Farmer to deliver goods at Atchinson's warehouse had been heretofore, and was in this instance acquiesced in by Atchinson, the delivery by the defendants to Farmer was a delivery to the plaintiffs."

Certainly the acceptance by one man of goods from a drayman or porter, is no evidence to constitute the porter or drayman his agent so as to charge him with goods which the porter or drayman received to deliver but lost on the way. In Ostrander *v.* Brown, 15 Johns. 39, it was held that when goods were taken away from the wharf, on which they had been deposited by the carrier, by a cartman usually or always employed by the consignee, but without his orders in this instance, it was no evidence of the delivery of a part alleged to be lost, though then as here the largest part was received.

The answer to the second point forms the subject of the 3d and 4th assignments of error. It was, "If the jury believe the 126 bales of cotton arrived at Philadelphia, the contract between the plaintiffs and the company has been fulfilled, and the plaintiffs cannot recover." As we have seen under the law and the special terms of the contract, the mere arrival of the goods at the office in Philadelphia did not discharge the carriers, and the learned judge might have directly negatived the point. His answer which affirmed it, but left to the jury to say whether the carriers had not assumed to transport and deliver the goods to the agent of the consignees was more favorable to the plaintiffs in error than they had a right to ask. There remain to be considered the 5th and 6th errors assigned, which relate to the answer to the 3d point, which was, "If the jury believe the plaintiffs or their agents did not notify the company of the deficiency in the numbers of bales received by them until two or three weeks after it was known to them, the plaintiffs cannot recover." The point was very rightly declined, for certainly the endorsement on the bill of lading, "no

[Shenk *v.* Philadelphia Steam Propeller Co.]

damage allowed, without being notified on receipt of the goods," by no interpretation can be extended to the case of goods not delivered at all, and so far as delay in making a formal demand bore on the question of fact submitted to the jury, it was very properly commented on by the learned judge.

Judgment affirmed.