## Utley v. Lehigh Valley Railroad Co., Appellant.

*Carriers—Railroads—Freight—Delivery to wrong person—Liability of carrier.*

A common carrier which delivered a carload of hay to a person other than the consignee is responsible therefor when the authority of such person to receive the consignment was not sufficiently established.

The mailing of a letter by the consignee to a company which had purchased the contents directing it to "take care of this car on

arrival" did not constitute sufficient authority to the carrier to make such delivery.

PORTER, P. J. and KELLER, J., dissent.

Argued October 11, 1926.  Appeal No. 66, October T., 1926, by defendant from judgment of M. C. Philadelphia County, July T., 1924, No. 840, in the case of J. F. Utley v. Lehigh Valley Railroad Company.  Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ.  Affirmed.

Assumpsit for mis-delivery by common carrier. Before BROWN, J., without a jury.

The facts are stated in the opinion of the Superior Court.

The Court entered judgment in favor of plaintiff in the sum of $161.80.  Defendant appealed.

*Errors assigned* were answers to various requests for findings of fact and conclusions of law, and the judgment of the Court.

*Allen S. Olmsted, 2nd,* and with him *Saul Ewing, Remick and Saul,* for appellant.—When goods are shipped on a straight bill of lading, the carrier is under no obligation to withhold delivery until the bill of lading is surrendered: Merchants & Miners Transportation Co. v. Branch, 282 Fed. 494; First National Bank v. Rogers, Brown & Co., 273 Fed. 529; Matter of Bills of Lading, 14 I. C. C. 346; Hinrichs v. Standard Trust & Savings Bank, 279 Fed. 382.  The goods were delivered to the consignee's duly authorized agent: Stone v. D. L. & W. R. R. Co., 72 Pa. Superior Ct. 416; Salomon Stern, Ltd. v. Davis, 292 Fed. 221.

*Milliard K. Goe,* and with him *Frank A. Chalmers,* for appellee, cited: Shenk v. Steam Propeller Co., 60 Pa. 109; Wernwag v. Phila. W. & B. R. Co., 117 Pa. 46;

Pa. R. Co. v. Stern, 119 Pa. 24; Salberg v. Pa. R. Co. 237 Pa. 495; Eberbach v. Clyde Steamship Co., 74 Pa. Superior Ct. 79, 1920.

OPINION BY CUNNINGHAM, J., March 3, 1927:

J. F. Utley, plaintiff below, brought an action in the Municipal Court of the County of Philadelphia to recover from the defendant railroad company the value of a carload of hay, alleging that there had been a misdelivery thereof by defendant's connecting carrier. The case was tried by a judge without a jury. By defendant's fourth requested conclusion of law the court was asked to find that under the law and all the evidence "the verdict must be for the defendant." This request the court refused and found in favor of plaintiff for the contract price of the hay. Defendant's motion for judgment non obstante having been overruled and final judgment entered on the findings, this appeal was taken. There is no dispute with respect to the amount of the award if there was a misdelivery. The material facts appearing from the record are these: Plaintiff is a hay and grain merchant residing at Capac, Michigan. During the month of April, 1923, Paoli E. Lathrop shipped a car of hay in car GT 17247 from Emmett, Michigan, consigned to Auburn, N. Y., which was purchased by plaintiff en route. The shipment was made under an order (yellow) bill of lading and was consigned to order of shipper, notify J. P. O'Hara, the O'Hara Company being plaintiff's agent. Upon arrival of the car at Auburn J. P. O'Hara and Company surrendered this order bill of lading to the agent of the carrier. Plaintiff sold the hay to the Balme Company, New York City, "Terms: cash on arrival." At the instance of plaintiff J. P. O'Hara and Company then reconsigned the car to plaintiff, the destination being Brooklyn Eastern District Terminal, Brooklyn, N. Y., and the bill of lading taken

by plaintiff's agent from defendant company being a straight (white) bill of lading. Plaintiff having received this bill of lading attached it to a sight draft for the price of the hay and had these papers forwarded by his bank at Capac, Michigan, to a New York bank for collection of the draft from the Balme Company. Payment of the draft having been refused by the Balme Company the papers were returned and the draft charged back to plaintiff's account. The car of hay was shipped by an interstate route to Brooklyn. The draft had been drawn under date of April 30, 1923, and on May 2, 1923, plaintiff sent the following letter to the Balme Company: "Car GT 17247 is billed to me at BEDT on a white bill of lading. You will please notify BEDT that you are to take care of this car on arrival. This is a car I had in transit and reconsigned from Auburn, N. Y. Reconsignment was made for me by O'Hara so he shows as the shipper." About May 16, 1923, upon presentation of this letter to the agent of defendant's connecting and delivering carrier at Brooklyn the car was delivered to the Balme Company. That company forwarded to plaintiff the receipted freight bill and the unloading record of the car, which freight bill had originally been made out in plaintiff's name as consignee but when received by plaintiff his name had been crossed out and the Balme Company's name substituted in pencil. In so far as is disclosed by the evidence, the agent of the carrier, although about to make delivery to one who was not the consignee, made no inquiry with respect to the possession of the bill of lading, and, on the other hand, had no notice of the forwarding of the bill of lading with the draft attached for collection. As we understand the record the appellant presented certain requests for findings of fact which are all marked refused. The facts which the learned trial judge was asked by the defendant to find are in substantial accord

with the facts we have stated and with the facts as stated in the opinion dismissing the motion for judgment n. o. v. and we do not understand why these requests were refused. The first four assignments of error are based upon the refusal of the requests but as the court in its opinion found the facts to be as stated in the requests the errors complained of in these assignments are harmless.

The substantial question involved arises out of the refusal by the court below of defendant's requests for conclusions of law to the effect that the letter of May 2, 1923, was sufficient authority, under all the circumstances, for the delivery of the car to the Balme Company. The remaining assignments of error are based upon the refusal by the court below of these conclusions of law. In considering the rights of plaintiff under the facts in this case we must start with the proposition that he is bound by the act of his agent, J. P. O'Hara and Company, in shipping the car from Auburn to Brooklyn under a straight, non-negotiable (white) bill of lading rather than an order (yellow) bill of lading. Both kinds are provided for by the Federal Bills of Lading Act of August 29, 1916, Chap. 415, 39 Stat. L. 538,; 8 U. S. Compiled Statutes 1916, 9311, and by direction of the Interstate Commerce Commission the uniform order bill of lading contains the provisions that "the surrender of [the] original order bill of lading properly endorsed shall be required before the delivery of the property," a provision not prescribed for a straight bill of lading. The material provisions of the act applicable to this case are those contained in sections 9 and 10 relative to the persons to whom a carrier may deliver goods in the absence of express notice from one having a right of property or possession in the goods not to make the delivery or of other information at the time of the delivery indicating that the person requesting the delivery is not lawfully

entitled to the possession of the goods. Under section 9 a carrier is justified in delivering goods to one who is—"(a) a person lawfully entitled to the possession of the goods, or (b) the consignee named in a straight bill for the goods, or (c) a person in possession of an order bill for the goods, by the terms of which the goods are deliverable to his order; or which has been indorsed to him, or in blank by the consignee, or by the mediate or immediate indorsee of the consignee." These provisions are substantially identical with those of section 12 of our Uniform Bills of Lading Act of June 9, 1911, P. L. 838. Delivery under a straight bill of lading is therefore primarily and ordinarily to be made to the consignee named therein. Admittedly the goods here in question were not delivered to plaintiff, who, as above stated, was the consignee named in the bill, and it cannot be successfully argued that the Balme Company was the agent of the consignee in the sense that delivery to it would be equivalent to delivery to him. We may therefore dismiss from consideration the cases (4 R. C. L. 840) holding that a delivery of goods shipped under a straight bill to the consignee named therein without requiring the presentation or surrender of the bill is a good delivery, although it may subsequently appear that "the consignor had forwarded the bill with a draft attached thereto to a bank for collection, thus showing an intention that the consignee should not have the goods without first paying therefor, provided only that the carrier has no knowledge of such intention." This is equally true with regard to the cases holding that a delivery to a truckman, or other agent of the consignee expressly authorized to receive the goods for his principal, is a good delivery. Nor are the authorities applicable to shipments made to one person in care of another of assistance. This case must therefore turn upon the question whether the Balme Company was

under all the circumstances "lawfully entitled to the possession of the goods" in so far as the carrier was concerned. That it was not lawfully entitled to such possession as between the plaintiff and it is not conclusive on the carrier. From Shenk v. The Philadelphia Steam Propeller Co., 60 Pa. 109, to Freedman et al., v. Bush et al., 284 Pa. 18, it has been consistently held that "whatever doubt may hang over other questions as to the termination of a carrier's or other bailee's responsibility, there is one point which is indisputable, that he must take care at his peril that the goods are delivered to the right person, for a delivery to a wrong person renders him clearly responsible . . . . . . though [made] innocently and by mistake, as when it is made upon a forged order." Again, "If delivery of the goods be made to a person other than the consignee, though innocently and by mistake but without the order of the consignor, the carrier is liable to the consignor in case of loss": Stone and Co. v. D. L. & W. R. R. Co., 72 Pa. Superior Ct. 416; Wernwag & Dawson v. The Phila.; W. & B. R. Co., 117 Pa. 46.

But it is earnestly contended by the learned counsel for appellant that the letter of plaintiff to the Balme Company (admittedly genuine and correctly identifying the car), construed as a whole, was sufficient authority from the plaintiff, as consignee, to the carrier to deliver the car to the Balme Company. It is clear as between the plaintiff and the Balme Company that it was the intention of plaintiff that the Balme Company should not have the goods without first paying the draft but the question is how should the carrier, which so far as the evidence shows had no knowledge of the sending of the bill of lading with the draft attached to the New York bank, have understood the letter in the light of its legal obligations? Bearing

in mind that it was the carrier's primary duty to deliver to the consignee named in the bill, it is pertinent to note that the letter was directed to the Balme Company and not to the carrier; that it contained no direction to the carrier to make delivery to the Balme Company; and that it did not even authorize the Balme Company to accept delivery of the car upon arrival. The most the Balme Company was authorized to do was "to take care of this car on arrival." Here was the situation: The Brooklyn Terminal was about to receive a car consigned to plaintiff who did not live in New York but had sold the contents to a resident of that city. Ordinarily the car would have been consigned to the Balme Company. Manifestly the letter was written to explain why the car had been consigned in the name of plaintiff rather than in the name of the purchaser of the contents and to enable the Balme Company to identify the hay it had contracted to purchase. In it the writer explains that the car is billed to him because he had it in transit and directed O'Hara to reconsign it from Auburn; hence, he says, O'Hara "shows as the shipper" and the car "is billed to me." The direction in so far as the carrier is concerned is substantially this: You will please notify the railroad company that car GT 17247, although billed to me, is intended for you and that you will take care of it on arrival. This is far short of a direction or authorization to deliver the car to the Balme Company and all the carrier could reasonably understand the letter to mean is that the Balme Company was the company for which the car was intended and that it would "take care of" it when it arrived; i. e., show in the ordinary way by procuring and producing the bill of lading that it was lawfully entitled to possession of the goods. Instead of making inquiry about the bill the carrier changed the name of the consignee on the freight bill and delivered the goods to the Balme Company. A majority

UTLEY *v*. L. V. R. R. CO., Appellant.        607

599, (1926).] Opinion of the Court—Dissenting Opinion of the Court.
of the members of this court are of opinion that the learned trial judge did not err in holding that the letter was not sufficient authority to show that the Balme Company was entitled to the possession of the car at that time and did not mean that the Balme Company was to take delivery of the car. It follows that the delivery was made innocently and by mistake, but at the peril of the carrier, to one not lawfully entitled to the possession of the goods.

The assignments of error are overruled and the judgment is affirmed.

---

DISSENTING OPINION BY KELLER, J., March 3, 1927:

The letter from the plaintiff to the Balme Company was not a request to the latter to take care of the car on arrival; it was a *direction* to the Balme Company to *notify the defendant's agent at the B E D T* (Brooklyn Eastern District Terminal) that it (the Balme Company) would take care of the car on arrival. This the Balme Company did by showing the letter itself to defendant's agent. I think a reasonable construction of this language—bearing in mind that the shipment was on a straight bill of lading, made out to the writer of the letter as consignee, which did not require the production of the bill of lading before delivery to the consignee or his designated agent—justified the delivery of the car to the Balme Company as the nominee of the plaintiff. If plaintiff had written direct to the defendant notifying it that the Balme Company would take care of the car on arrival the defendant would have been justified in delivering the

car to the person so designated on payment of the freight. A direction by the consignee to the Balme Company so to notify the railroad company, brought to the latter's attention by the production of the letter itself, should have the same effect.

President Judge PORTER authorizes me to say that he concurs in this dissent.