EDWIN H. HULL *vs.* CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.

October 26, 1889.

Carrier—Contract Limiting Liability—Burden on Carrier to Show Absence of Negligence.—Where, by special contract, the liability of a common carrier of goods is limited to loss or injury through his negligence, the carrier must, to excuse himself, after loss or injury is shown, show that it occurred from some cause other than his negligence. He must show there was no negligence on his part. Following *Shriver* v. *Sioux City & St. Paul R. Co.*, 24 Minn. 506.

Appeal by defendant from an order of the district court for Hennepin county, *Hicks*, J., presiding, granting a new trial after a dismissal ordered at the trial at the close of plaintiff's case.

*J. H. Howe, S. L. Perrin*, and *Weed Munro*, for appellant.

*Thomas J. Leftwich*, for respondent.

GILFILLAN, C. J. At Minneapolis plaintiff delivered to defendant, a common carrier, 18 horses, to be by it transported upon its railroad from Minneapolis to Ashland, Wis. The evidence tends to show they were in good condition when they were so delivered, and that in the course of transportation two died, and several others were injured. The action is to recover damages. On the trial, at the close of the plaintiff's evidence, the court dismissed the action. On plaintiff's motion it afterwards ordered a new trial, and from that order this appeal is taken.

By the written contract for carriage, executed by the parties, it was stipulated that the plaintiff should "load, feed, water, and take care of such stock at his own expense and risk, and will assume all risk of injury or damage that the animals may do to themselves or each other, or which may arise by delay of trains;" and also "that said company shall not be liable for loss by jumping from the cars, delay of trains, or any damage said property may sustain, except such as may result from a collision, or when the cars are thrown from the track in course of transportation." The court below seems to have dismissed the action on the grounds that, under the contract limiting the defendant's liability, the burden of proof upon the matter of defendant's negligence was upon the plaintiff; that he had not introduced evidence of negligence sufficient to make a question for the jury; and that there was contributory negligence on the part of the plaintiff. The only question argued here at any length is, was it necessary for plaintiff, in order to make out a cause of action, to show that the death of the horses and injury to others was caused by defendant's negligence; or was it enough for him to prove their delivery for carriage in good condition, and the injury to them during the carriage, leaving it then for defendant to excuse itself by showing that the damage was not due to negligence on its part?

But we will say in passing that, wherever the burden of proof lay, the case ought to have gone to the jury, for there was evidence from which the jury might have found that the injury to the horses was caused by the negligent manner in which defendant's train was handled. It appears that with the full train, without detaching any of the cars from the engine, those in charge " bucked snow," as it is called. As a witness described it, " they would take a running jump at a snow-drift." And this appears to have caused so violent shocks that, as a witness testified, one could not stand, and could hardly sit, in the caboose, which seems to have been at or near the rear of the train, while the car in which the horses were was pretty well up in front, where the shocks would be more violent. It ought to have been left for the jury to say whether that was the way in which the train was managed; whether that was a prudent way of managing a train carrying live-stock; and whether the injury to the horses was

caused by it. As to contributory negligence on the part of plaintiff, the evidence was not such that the court could properly determine it. The most that can be said of it is that it ought to have been submitted to the jury.

But, because the court below seems to have granted a new trial for the reason that on the trial it misapprehended the rule as to the burden of proof as to negligence, we will consider that question. The contract, in terms, exempts the defendant from liability for damages, except such as might result from collision or the cars being thrown from the track. This goes further than the law permits a common carrier to go in limiting his liability. Since the *Christenson Case,*— *Christenson* v. *Am. Express Co.*, 15 Minn. 208, (270,)—it has been settled by judicial decision in this state that a common carrier cannot exonerate himself by contract from liability for his own negligence, and this rule is now recognized by statute. Laws 1885, *c.* 188, § 26. The most favorable construction for the defendant which could be given to this contract would hold that it exempts it from liability for damages from any cause but its own negligence, and collisions, and the cars being thrown from the track. In *Shriver* v. *Sioux City & St. Paul R. Co.*, 24 Minn. 506, the contract attempted to exempt the carrier except for *gross* negligence. The court held it went further than the law allowed, and treated it as a contract exempting the carrier except for negligence of any degree.

The rule as to the burden of proof held in that case is applicable to this; and upon further examination and consideration we are satisfied that the rule is justified by reason and public policy. The common law excepts from the carrier's liability loss or damage caused by act of God or the public enemy. No one would contend but that, where the common-law liability is not varied by contract, the carrier, to excuse himself, must show that the loss or damage was within one of the exceptions to his liability; that it was caused either by the act of God or of the public enemy. Such proof would make a *prima facie* case of non-liability. The plaintiff might then show that, but for the carrier's negligence, the loss or damage would not have occurred though caused apparently by one of the excepted causes. The reason why proof of loss by the act of God or the pub-

lic enemy makes a *prima facie* case of non-liability is that in the nature of things those causes of loss arise without fault of the carrier. He can in no case be responsible for their existence, though he may be for bringing the goods within their operation. Suppose by special contract the parties except one other cause of loss, say by fire, why, in that case, should the owner be required to prove in the first instance that the loss did not occur from that excepted cause? Inasmuch as such a cause of loss may arise by negligence of the carrier, it may be doubted (and we do not in this case decide it) that proof of loss from such a cause, without evidence that it did not arise through negligence of the carrier, would make a *prima facie* case of non-liability; certainly nothing short of evidence that the loss was from the excepted cause would excuse him. It must be borne in mind that the liability is not created by the special contract. The law creates the liability, and merely permits the parties to except from it certain causes of loss. *Prima facie*, the carrier is liable upon proof of delivery and acceptance for carriage, and of loss or damage in carrying. If there be any contract varying his liability he must show it, and that the loss came within the exception made by it. It is not for the owner to prove there was no such contract. And if such a contract be proved it would seem illogical to require of him to show that the loss did not occur from the cause excepted by it. If the contract, instead of specifying certain exceptions to the liability, is general in its terms, and excepts from the liability all causes of loss or damage but the carrier's negligence, how does the carrier show that the loss or damage was within the exception, but by proof that it occurred from a cause other than his negligence? Some of the courts, to justify putting the burden of proof as to negligence on the plaintiff, consider the carrier, where his liability is varied by contract, as a private or special, and not a common, carrier. This would make the carrier's character, whether common or private, depend not on the character of the business he is engaged in, or holds himself out to the world to be engaged in, but on whether he has, by contract, varied, even in the slightest particular, the liability which the law, in the absence of contract, imposes on him. We cannot accept such a doctrine. We think the

common carrier remains such even though in the particular case he may have, to some extent, limited his liability by contract, and that all the rules of law applicable to common carriers apply to such a case except in so far as the parties may, by express contract, have varied them. The severe rule of liability of the common law was imposed largely from considerations of sound public policy. A common carrier is engaged in a public employment. Ordinarily, one who delivers to him goods parts entirely with his possession and control over them, and knows nothing of what takes place during the carriage, while the carrier has possession and control over them, and is supposed to know, or have the means of knowing, what happens to them, and if they are lost or injured how it occurred. The common law recognized the danger of collusion, connivance, and fraud between the carrier and his servants or others, which might leave the owner practically at the mercy of the carrier if he was required to prove negligence or fraud. To make such proof he would ordinarily have to call the very men whose recklessness or frailty caused the injury. To prevent this the law excused the carrier only upon his proving that the loss or damage occurred from the act of God or the public enemy,—causes for which he could not be supposed to be responsible. The reasons which require the carrier to excuse himself for his failure apply with as much force to a case of limited as to a case of full common-law liability.

Order affirmed.