DORA WHEELER, Appellant, *v.* THE OCEANIC STEAM NAVIGATION COMPANY (Limited), Respondent.

The provision of the U. S. Revised Statutes (§ 4281), which declares that if any shipper of certain articles specified, among which are "pictures," shall lade the same as freight or baggage on any vessel without, at the time, giving notice to its owner, master or agent of the true character and value of the property shipped, and having the same entered upon the bill of lading, "the master and owner of such ship or vessel shall not be liable as carriers thereof in any form or manner," while it relieves. the ship owner from liability as carrier, when the property has not been entered on the manifest, does not affect his liability as bailee for hire.

As bailee, therefore, the owner is liable where it is shown that the property was lost through his negligence.

Plaintiff, an artist, took passage to New York on one of defendant's ships; in addition to her ordinary baggage she delivered to the ship for transportation a box with iron hinges and corner clasps and closed by a lock, which contained valuable pictures. Besides the address this box was marked "studio." Plaintiff in no way attempted to deceive defendant as to its true character, or to make it appear to be personal baggage. It was not entered upon the bill of lading, but was put in the hold of the vessel, which did not stop after sailing until it reached its port of destination. Upon arrival the trunks and packages of the passengers were landed upon the dock, each one being left to find and collect his own. Plaintiff's package was never delivered to her. In an action to recover for the loss thereof on the ground of alleged negligence on the part of the master, the complaint was dismissed because of plaintiff's failure to notify the master of the true character and value of the contents of the box, and to have the same entered on the bill of lading as required by said statute. *Held*, error; that non-delivery at the port of destination was *prima facie* evidence of negligence, and defendant was liable as bailee.

*Hinton* v. *Dibbin* (2 Ad. & El. [N. S.] 646), distinguished.

*It seems* a carrier may refuse to carry property such as is specified in said statute unless its value and character are disclosed and entered upon the ship's manifest.

*Wheeler* v. *Oceanic Steam Nav. Co.* (52 Hun, 75), reversed.

(Argued December 2, 1890; decided January 13, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 29, 1889, which affirmed a judgment in favor of defendant entered upon an order granting a motion on the trial at Circuit to dismiss the complaint.

This action was brought to recover damages arising from the alleged negligent failure of defendant to deliver to plaintiff a box containing pictures shipped by her on one of defendant's vessels.

The facts, so far as material, are stated in the opinion.

*Boudinot Keith* for appellant. Plaintiff proved that the goods were taken into the defendant's control; that defendant assumed to and did bring them in its vessel to New York; that the goods were thereafter demanded in New York. Her cause of action was thus complete, and the burden of proof

was upon the defendant as a bailee to account for them. (*Canfield* v. *B. & O. R. R. Co.*, 93 N. Y. 538; Kent's Comm. 559; *Fairfax* v. *N. Y. C. & H. R. R. R. Co.*, 67 N. Y. 11; *Burnell* v. *N. Y. C. & H. R. R. R. Co.*, 45 id. 148; *Bank of Oswego* v. *Doyle*, 91 id. 32; *Curtis* v. *D., L. & W. R. R. Co.*, 74 id. 124; *Turbell* v. *R. E. S. Co.*, 110 id. 170; *Ouderkirk* v. *C. N. Bank*, 119 id. 267; Edwards on Bailment, 7; Jones on Bailment, 23.) Section 4281 of the Revised Statutes of the United States exempts the defendant from its absolute liability as carrier of plaintiff's goods, but not from its lesser liability as simple bailee. (Sedgwick on Stat. & Const. Law, 313; 1 Mod. 35; 1 Kent's Comm. 162; *People* v. *Draper*, 15 N. Y. 532; *Maillard* v. *Lawrence*, 16 How. [U. S.] 251; *Hathorn* v. *Ely*, 28 N. Y. 81; *G. M. Co.* v. *Fargo*, 3 J. & S. 434; *Walker* v. *Jackson*, 10 M. & W. 161; *Butler* v. *H. R. R. R. Co.*, 3 E. D. Smith, 571; *Cent. Trust Co.* v. *W., etc., R. Co.*, 39 Fed. Rep. 418.) The unnecessary evidence given by the plaintiff, that the defendant issued a circular offering a reward for the recovery of the case, was not an accounting by the defendant entitling it to a nonsuit. (119 N. Y. 269; *Claflin* v. *Meyer*, 75 id. 263.) It was not necessary for the plaintiff to tender the defendant any money in payment of freight in order to maintain this action, the refusal to deliver not being upon the ground of non-payment of freight. (*Butler* v. *H. R. R. R. Co.*, 3 E. D. Smith, 571.)

*Lawrence Godkin* for respondent. The statute was applicable, whether the pictures were freight or baggage. (U. S. Stat. of 1851, chap. 43, § 2; 9 U. S. Stat. at Large, 635; U. S. Stat. of 1871, chap. 100, § 69; 16 U. S. Stat. at Large, 458, chap. 100, § 69; *Chamberlain* v. *W. T. Co.*, 44 N. Y. 305; *Hinton* v. *Dibbin*, 2 Ad. & El. [N. S.] 646.) The pictures were not baggage. (*R. R. Co.* v. *Fraloof*, 100 U. S. 24; Bouvier's Law Dict. tit. Baggage; *Pardee* v. *Drew*, 25 Wend. 459; *Hawkins* v. *Hoffman*, 6 Hill, 586; *Wilson* v. *G. T. R. Co.*, 56 Me. 60; *M. R. R. Co.* v. *Carrow*, 73 Ill. 348; *Blu-*

*mantle* v. *F. R. R. Co.*, 127 Mass. 322; *Stimson* v. *C. R. R. R. Co.*, 98 Cush. 83; *Dexter* v. *S., etc., R. R. Co.*, 42 N. Y. 326.) Section 4281 of United States Revised Statutes furnishes the law which will govern defendant's liability in this case. That statute applies to owners of foreign as well as domestic vessels. (*The Scotland*, 105 U. S. 24; *Curtis* v. *D., L. & W. R. R. Co.*, 74 N. Y. 116; *Monroe* v. *Douglas*, 5 id. 447.)

FINCH, J. Section 4281 of the Revised Statutes of the United States provides, in substance, that if any shipper of certain articles which are specifically named, and among which are "pictures," shall lade the same as freight or baggage on any vessel without at the time giving notice to its owner, master, or agent of the true character and value of the property shipped, and having the same entered upon the bill of lading, "the master and owner of such ship or vessel shall not be liable as carriers thereof in any form or manner." The protection of this statute has been successfully invoked by the defendant company against the loss which forms the subject of this action.

Dora Wheeler, the plaintiff, and described in the evidence as an artist of established reputation, returning home from a foreign journey, took passage on the steamer Germanic, and in addition to her ordinary baggage, delivered to the ship for transportation a package of valuable portraits which she had painted while abroad. These were contained in a box of white wood with iron hinges and corner clasps and closed by a lock. The package itself, besides the address, was marked "Studio," and its appearance unmistakably indicated something other than and different from the ordinary baggage of a traveler. There was no attempt to deceive the defendant as to its true character, or by artifice or misrepresentation to make it appear to be personal baggage, or shield it as such from proper freight charges. Nevertheless, it was not entered upon the bill of lading with notice of its character and value, or in any manner whatever, but was put in the hold of the vessel for transportation to New York. The voyage was unattended by either

accident or delay, and it is reasonably certain that the package came in the ship to its port of destination. Arrived at its wharf, the trunks and packages of the passengers were landed upon the dock, each individual being left to find and collect together his own. The package in question was never delivered to its owner, but was probably misdelivered, or permitted to be taken by one having no right to receive it. For the damage thus sustained the plaintiff brought this action, and has been defeated upon a construction of the statute which is challenged by this appeal.

That construction is a very broad one. It denies liability " in any form or manner.". It relieves the ship-owner from all responsibility where the baggage or goods have not been entered upon the manifest. It involves a ruling that he may accept the property for transportation, and yet owe no duty, even of the slightest care, to its owner, who finds that he has put his baggage in a lottery and must take the chances of its restoration. The goods may be delivered to the wrong person through gross carelessness, or be ruined by inexcusable negligence, or even stolen or converted by the crew, and yet the ship-owner is not liable "in any form or manner ; " and such, it is claimed, is both the language and purport of the statute. Its provisions meet the shipper at the port of destination, and place him at the mercy of the owner or master of the vessel. If the property is restored, it is through the grace of those in command ; if it is not delivered, they are not liable for its loss " in any form or manner." Such construction goes far beyond the due protection of those engaged in the transportation of property, and, instead of merely moderating or lessening their liability, sweeps it all away, and leaves the baggage and property of the passenger protected by no duty and guarded by no liability. It is quite true that, even upon this construction, the courts would hesitate and halt before a proven theft or an actual conversion, on the ground that the fact and opportunity of transportation did not change the nature or character of such positive wrongs ; but there would still remain a gap to be spanned between the actual wrong-doer and the defendant

company, and, when safely crossed as it well might be, the relief would be of little value, since ordinarily the shipper can neither know nor prove the cause of the loss, especially where motive exists for its concealment. If, therefore, the statute admits of a more just construction, and one which, while giving needed protection to the ship-owner, preserves some reasonable duty to the shipper or to the passenger, I think we should not hesitate to adopt it.

The construction which has prevailed eliminates from the statute the words "as carrier thereof," and gives them no force or meaning. They become wholly superfluous. To us they appear to be vital to the true interpretation. The liability of the carrier as such was well understood by the framers of the statute. It had long been settled so that no one could mistake it. By force of his public employment, he became an insurer of the property entrusted to his care, and liable for its loss, irrespective of the cause, unless from the act of God or the public enemy. But involved in this greater liability and absorbed by it was a lesser liability as bailee for hire; of no consequence while the greater liability existed, but surviving the destruction of that, so that when the carrier ceased to be liable as carrier, he yet remained liable as bailee. In *Dorr* v. *N. J. St. Nav. Co.* (4 Sandf. 145), the doctrine was thus expressed: "A common carrier has in truth two distinct liabilities; the one for losses by accident or mistake where he is liable by the custom of the realm or the common law as an insurer; the other for losses by default or negligence where he is answerable as an ordinary bailee," and the language was cited by the Federal Court in *Railroad Co.* v. *Lockwood* (17 Wall. 363), and the doctrine approved in *Dorr* v. *N. Jersey St. Nav. Co.* (11 N. Y. 485), where it was held that the carrier might by special agreement strip himself of that character, and so become, as to the particular transaction, an ordinary bailee and private carrier for hire. In *Lamb* v. *Camden & A. R. R. & T. Co.* (46 N. Y. 278), Grover, J., said: "In considering this question, it must be borne in mind that it has already been determined that the defendant was exonerated

from all liability as carrier for a loss caused by the destruction of the cotton by fire, by an express provision of the contract, in pursuance of which it transported the cotton. Relieved of this responsibility, it was liable only, in case it was destroyed, as bailee for hire; and it is undisputed that such a bailee is liable for the loss of the property only in cases where the loss is the result of his negligence." These cases show that the liability for negligence as bailee survives even when by special contract the carrier has thrown off his liability as such; and the courts of this state have exhibited a very decided purpose to retain and enforce that liability wherever it is possible. Even that may be thrown off by force of a special agreement, but we have refused to permit any general words to accomplish such result, and have insisted that where the carrier seeks to contract against the consequences of his own negligence, he must say so openly and plainly so as not to be in the slightest degree misunderstood, and is not at liberty to hide the stipulation away under any form of words however broad or formidable. (*Nicholas* v. *N. Y. Central & H. R. R. R. Co.*, 89 N. Y. 372.)

But what the carrier and his customer might accomplish by special agreement, Congress could effect by statute in the absence of such agreement, but must necessarily leave the lesser liability of bailee unaffected if it merely removes the liability *as carrier*, and does not, by clear and definite language, indicate its purpose to go further. So much, and no more than that, the section under consideration accomplished, for it distinctly removes the liability *as carrier* without touching that as bailee. We are bound to assume that the word "carrier" was used in its recognized legal sense, and not in some loose or careless and merely colloquial way; and that, especially, because it occurs in connection with the idea of liability, and the phrase "liable as carrier" can only mean the liability attached by law to that public employment.

Nor is this construction affected by the added words "in any form or manner." They are not used disjunctively, and so as to constitute a separate command, but qualify the expression "shall not be liable as carrier thereof," the full force of the

words being that the liability *as carrier* shall not exist in any form of action or through any manner of procedure. In *Atlantic Mut. Ins. Co.* v. *McLoon* (48 Barb. 28), it was held that the carrier's liability assumed two different forms, and that he might be proceeded against either in tort for a violation of his public duty, or on contract for a breach of his implied agreement to carry and deliver safely. And so the statute deemed it prudent, in relieving the carrier from liability, to add "in any form or manner," that is by any form or mode of action or proceeding whatever.

We are further referred to the case of *Hinton* v. *Dibbin* (2 Ad. & Ell. [N. S.] 646), in which it was held, under a similar statute (1 Wm. IV., chap. 68), that the carrier could not be held liable even for gross negligence ; but that decision was founded upon an enactment from which the words "liable *as carrier*" were conspicuously absent. That act freed the ship-owner from any liability for the loss, and even under such provision, where the property was not lost, but merely delayed in its transit, damages for the consequent injury resulting from negligence could probably be recovered.

It follows that the nonsuit in this case was erroneous. The plaintiff, in her complaint, alleged negligence, and the facts which she proved, *prima facie*, established it. The non-delivery at the port of destination is presumptive evidence of such negligence. (*Canfield* v. *B. & O. R. R. Co.*, 93 N. Y. 538.) In addition it was shown that the vessel stopped nowhere until the port of destination was reached, and then the baggage was placed upon the dock with little of order or control, and leaving the passengers to find their own in the consequent confusion. And so a case was made which should have gone to the jury.

A possible criticism upon this view of the statute is quite likely at this point to suggest itself. One may inquire of what value to the ship-owner is the enactment when, after all, he is left liable for the loss, and responsible, whether the property is entered upon the ship's manifest or not ? The inquiry goes to the root of the matter, and its answer will further test

the justice and propriety of our interpretation. Under it, I think, the ship-owner is protected as far as he should be, and in two very important respects.

First. The statute leaves him at liberty to refuse to carry the property at all unless its value and character are disclosed and entered upon the ship's manifest. The law makes him master of the situation, and able, if he shall please, to enforce obedience to it. As carrier he could not refuse, but since he does not become such unless the proper entry is made, he may refuse until then to transport the property at all. As a simple bailee he may take the property or decline it. If now he chooses to take it in that character the act is voluntary; there is no compulsion about it; and on what principle shall we say that because he so takes it he shall be absolved from all care over it, at liberty to be as negligent as he pleases, and the only bailee in the world having that lawless control?

Second. If a loss occurs he is no longer liable as an insurer. The door to a just defense is opened before him, and the burden of proof to establish negligence is shifted to his adversary. If the ship-owner has in truth exercised due care, he may show it and go discharged. If he has not exercised it, if he has been negligent and careless, he ought to respond in damages, and must do so.

It was suggested by the General Term, in aid of their construction, that one reason for the enactment was the interest which the government had in procuring entries upon the vessel's manifest of all property shipped. If that be true the construction of the courts below tends very distinctly to defeat such purpose; for, while it assumes it to be for the interest of the passenger to enter his baggage or parcel upon the bills of lading, it leaves him liable to pay possible charges for freight, and so makes his action doubtful; while on the other hand it becomes at once the strong and paramount interest of the ship-owner and master to keep all baggage, and property carried as such, off of the ship's manifest so far as possible; since, if it goes on they become liable as insurers, but if it does not they incur no responsibility, not even that of private bailees. Pas-

sengers are little likely to be versed in the shipping laws; owners are sure to be; and the traveler who sought to put his baggage upon the manifest might find it no easy matter to accomplish against the will of ship-owners and officers. In the haste and confusion of departure they could easily postpone or avoid attention to the subject, or repel the passenger with the insolence of command. All baggage and parcels for which no separate freight was to be charged, would be kept off of the manifest so far as owners and officers could effect that result.

It may be that Congress might go as far as the English statute appears to have gone, but our judgment is that it has neither done so nor intended to do so, and that it has stopped short of a rule which would protect master and ship-owner from the consequences of their own negligence. That, the Federal Court has held, is against public policy and, presumably, it would not encourage a construction in such direction where any other was permissible. It follows that the plaintiff was erroneously defeated and should have an opportunity to present her case to a jury.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.