S. T. BIBB v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS.

Decided December 24, 1904.

**1.—Carriers of Freight—Liability for Goods Lost in Transit.**

Where plaintiff sued for a shortage in the weights of certain cars of coal shipped to him over defendant's road as the terminal carrier it was error for the court to charge that if, after defendant had received the coal, its agents or employes failed to exercise ordinary care for its safe transportation and delivery at destination and by reason of such failure plaintiff did not receive the full amount of coal billed to him, the jury should find for plaintiff the value of the coal lost, but unless they so found and believed, to find for the defendant, since defendant as a common carrier was liable for goods lost, injured or destroyed while in its care from any cause whatsoever, other than the act of God or the public enemy, the fault of the owner or a seizure of the goods under legal process.

**2.—Same—Connecting Carrier—Liability of Delivering Carrier.**

A connecting carrier who has completed the transportation and delivered the goods to the consignee in a damaged condition or deficient in quantity is liable for the damage or deficiency without proof that it was occasioned by his fault, unless he shows that he received the goods in the condition in which he delivered them.

Appeal from the County Court of Tarrant. Tried below before Hon. R. F. Milam.

*W. R. Sawyer,* for appellant.—1. The court erred in the charge to the jury wherein they were instructed that defendant was required to use only ordinary care in the transportation of freight over its line and that plaintiff could not recover if defendant showed that it used ordinary care in the handling of the coal alleged in plaintiff's petition to have been shipped over defendant's line and lost, the charge requiring less degree of care than allowed by law.

2. Where freight is shipped over three different lines of railway and it is proven that a loss of a part of same has occurred, the court should charge that if the evidence fails to show on what particular line, the loss, if any, occurred, then there exists a presumption that the loss occurred through the negligence of the delivering carrier. Texas & P. Ry. Co. v. Adams, 14 S. W. Rep. (Texas Sup.), 666; Gulf, C. & S. F. Ry. Co. v. Edloff, 34 S. W. Rep. (Texas Sup.), 416.

*T. S. Miller, Spoonts & Thompson* and *J. H. Barwise, Jr.,* for appellee.—There being no presumption of law that a damage which has occurred in a shipment over several lines, occurred on the line of the last carrier, it would be directly upon the weight of the evidence and reversible error to instruct the jury with reference to such presumption. Railway Co. v. Knippa, 27 S. W. Rep., 731; Southerland v. Railway Co., 40 S. W. Rep., 196; Heldt v. Webster, 60 Texas, 209; Biering v. Bank, 69 Texas, 602 (7 S. W. Rep., 90); Railway Co. v. Robinson, 73 Texas, 286 (11 S. W. Rep., 327); Stooksbury v. Swan, 85 Texas, 564 (22 S. W. Rep., 963).

CONNER, CHIEF JUSTICE.—Appellant instituted this suit in the County Court of Tarrant County against appellee for the value of an alleged loss of 183,495 pounds of coal. It was alleged in substance that during the years of 1901, 1902 and 1903, appellant had purchased at Alderson, Indian Territory, some 33 carloads of coal for transportation to him at Fort Worth, Texas. That the delivery for shipment at the initial point was to the Choctaw, Oklahoma & Gulf Railway Company, which in turn delivered it to the Missouri, Kansas & Texas Railway Company, which delivered the same to the defendant company at the state line of Texas, and by the latter company delivered to appellant at Fort Worth, Texas. That when so delivered to appellant the cars of coal were found to be short in the aggregate amount stated, an exhibit attached to the petition giving the number of car of each shipment, the number of pounds of coal short in each car, with the value of the same and the alleged overcharge of freight thereon, and the sev-

eral dates of each shipment. The appellee answered by general denial, and specially that the shipments in controversy were interstate shipments; that it received the same from the Missouri, Kansas & Texas Railway Company as a connecting carrier, which under the law it was bound to do, and that it was only liable for loss occurring through negligence of its own, which it denied. There was a verdict for defendant, and from a judgment thereon this appeal has been prosecuted.

In the submission of the issues to the jury the court charged, among other things, that "it is the duty of the agents and employes of every common carrier receiving freight for shipment to exercise ordinary care for the safe transportation and delivery of said freight at its destination within a reasonable length of time." Ordinary care was then defined, and the jury further instructed to the effect that if they should find that appellee, "after receiving said coal, its agents or employes failed to exercise ordinary care for the safe transportation and delivery of said coal at its destination within a reasonable length of time, and by reason of said failure, if any, plaintiff did not receive the full amount of coal which was billed to him, you will find for plaintiff in such sum as you believe from the evidence was the reasonable market value of the coal, if any, which plaintiff failed to receive on account of the alleged negligence of the defendant, and unless you so find and believe, you will find for the defendant."

We think the court erred as assigned in thus limiting appellee's liability.

The Constitution fixes the status of railway companies engaged in the transportation of goods, wares and merchandise as that of common carriers, and our statutes declare that the duties and liabilities of carriers in this state shall be the same as are prescribed by the common law. Revised Statutes, article 319. Authorities need not be cited for the proposition that by the common law, and as frequently declared in this State, a common carrier is liable for goods injured, lost or destroyed while in his care from any cause whatever, other than the act of God, the public enemy or the fault of the owner or a seizure of the goods under legal process. Appellee, indeed, in effect, concedes the error in the court's charge, but insists, in substance, that reversible error was not committed, inasmuch as appellee thus pleaded its liability and appellant so invited the submission of the issue. Upon examination, however, we do not think appellant's requested instruction refused by the court can be properly construed as an invitation to submit the issue as was done. Nor do we think a failure to request a proper charge and appellee's adopted method of limiting its liability will relieve the court's charge of a radical error so affirmatively presented.

Other errors are assigned, as for instance, that the court erred in instructing the jury that appellee was not liable for losses of coal that may have occurred on the lines of the Choctaw, Oklahoma & Gulf Railway Company and the Missouri, Kansas & Texas Railway Company; and that the court erred in refusing to give appellant's special charge to the effect, that if the jury believed from the evidence that the coal was shipped as alleged, and that part of it had been lost sub-

sequent to such shipment, and that the evidence failed to show on what particular line or lines, if any, the loss occurred, that then the presumption existed that the loss, if any, occurred through appellee's negligence; but we have found no reversible error in these particulars.

Appellant's petition was specific in its averment that the coal as shipped had been delivered to appellee, and that the alleged loss occurred while in appellee's possession, and there was evidence tending to show that at least a part of the alleged loss probably occurred after the delivery of the coal to appellant.. Generally speaking, it seems to be well settled that a connecting carrier who has completed the transportation and delivered goods to the consignee in a damaged condition, or deficient in quantity, will be held liable in an action for the damage or deficiency without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he has delivered them. See Hutchinson on Carriers, sec. 761; Ryan & Co. v. Missouri, K. & T. Ry. Co., 65 Texas, 13; Missouri P. Ry. Co. v. China Mfg. Co., 79 Texas, 26; Texas & P. Ry. Co. v. Penick & Ford, decided by this court in an unpublished opinion December 5, 1902; Savannah, F. & W. Ry. Co. v. Harris, 26 Fla., 148, 7 So. Rep., 544; St. Louis & S. W. Ry. Co. v. Birdwell (Ark.), 82 S. W. Rep., 835. The presumption, however, is one of fact and evidently should not be so declared in an instruction to a jury in cases where, as here, evidence was introduced tending to rebut the presumption. See Galveston, H. & S. A. Ry. Co. v. Knippa, 27 S. W. Rep., 731; Southerland v. Texas & P. Ry. Co., 40 S. W. Rep., 196, and cases therein cited. Appellant himself testified to the effect that the various cars involved in the controversy were delivered to him in Fort Worth, and that he did not personally weigh the coal that was shipped therein; that the coal was hauled from the railroad yards in Fort Worth by his own teams; that he did not know how much coal was delivered to the appellee, nor how much was put in the cars at Alderson, Indian Territory; that he could not say whether the coal which is claimed to be short was ever delivered or not as he was not present to see; that he ordered the coal in one and two carload lots, so that he could sell the coal direct from the cars and thereby avoid expense and labor of having to haul the coal from the cars and load it into his yards; that at least one-half of the coal was sold to his customers and delivered direct from the cars; that he did not know how much coal was wasted in unloading after delivery to him from the railroad company; that there was but one car weighed by the defendant before delivery, and that after delivery the cars were exposed before unloading; that there were a dozen or more men who unloaded coal for him, and that as the coal was taken from the cars it was weighed by his son at the yards and delivered to customers.

Neither the son nor unloading employes testified, and we accordingly conclude as indicated that in this state of the evidence, appellant's special charge was properly refused, and that all other assignments of error, save the third, should be overruled.

For the error, however, of the court in the charge hereinbefore discussed, the judgment is reversed and the cause remanded.

                                        *Reversed and remanded.*