**MALLORY S. S. CO. v. G. A. BAHN DIAMOND & OPTICAL CO. et al.**

(Court of Civil Appeals of Texas. Austin. Nov. 6, 1912. On Rehearing, Feb. 28, 1913.)

1. SHIPPING (§ 132*)—DAMAGE TO GOODS—EVIDENCE—CERTIFICATE OF SEAWORTHINESS.

That a certificate of seaworthiness had been issued by the authorities before the vessel left port was not conclusive evidence of its seaworthiness in a shipper's action for damage to a shipment, due to a leak in the vessel.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

2. SHIPPING (§ 137*)—DAMAGE TO GOODS—PEREMPTORY INSTRUCTIONS.

Where, in an action against a steamship company for injury to a shipment due to a leak in the vessel caused by a collision with a coral reef, the evidence showed that the injury would not have occurred but for latent defects in the vessel rendering it unseaworthy at the time it left port, the court properly refused a peremptory instruction for defendant; the Harter Act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), exempting the owner of a vessel from liability for damages to a shipment in certain cases, applying only when he has exercised due diligence to render the vessel in all respects seaworthy.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 492; Dec. Dig. § 137.*]

3. SHIPPING (§ 132*)—DAMAGE TO GOODS—BURDEN OF PROOF.

Where, in an action against a steamship company for damage to a shipment of goods, due to a leak in the vessel, the plaintiff showed delivery of the goods to the company and delivery by the company to the last connecting carrier in a damaged condition, the burden was then upon the company to show that the vessel was seaworthy when it left port and that the injury was not due to its negligence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

4. TRIAL (§ 252*) — DAMAGE TO GOODS — INSTRUCTION—APPLICABILITY TO EVIDENCE.

Where, in an action against a steamship company for damage to a shipment of goods, there was some evidence that the damage was partly caused by acid coming in contact with the goods while in transit, the court properly instructed on this phase of the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

5. SHIPPING (§ 132*)—DAMAGE TO GOODS—INSTRUCTIONS—EVIDENCE.

Where, in an action against a steamship company for damage to a shipment of goods, the evidence showed that the defendant failed to use due diligence to ascertain whether the vessel was seaworthy before commencing the voyage, the court properly refused to instruct that defendant was not bound as a matter of law to make the vessel seaworthy but was only required to exercise due diligence in such respect.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

6. SHIPPING (§ 132*)—TRIAL (§ 260*)—DAMAGE TO GOODS—INSTRUCTION—EVIDENCE.

In a shipper's action against a steamship company for damage to goods, the court properly refused to peremptorily instruct for defendant as to a certain part of a shipment which contained silver novelties in a closed box marked "hardware" and was described in the bill of lading as "one cs hdw," though the bill of lading also provided that defendant should not be liable for any "article of extraordinary value not specially rated in the published classification, unless a special agreement to do so and a stipulated value of the articles are indorsed thereon," where, not only was the matter fully covered by the general charge, but there was no evidence of want of notice or that defendant would have refused the shipment or would have placed it in a different part of the ship if its contents had been known.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132;* Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

7. TRIAL (§ 334*)—VERDICT—INSTRUCTIONS.

In a shipper's action against a steamship company for damage to goods, a verdict for plaintiff in a certain sum, with interest from the date of shipment, was not erroneous because it provided for interest, though the instructions made no mention of interest, where, as a matter of law, the plaintiff, if entitled to recover at all, was entitled to recover interest.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 785; Dec. Dig. § 334.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

On Rehearing.

**8. SHIPPING (§ 132*)—DAMAGE TO GOODS— INSTRUCTION—EVIDENCE.**

In a shipper's action against a steamship company for damage to goods, the court properly refused to peremptorily instruct for defendant as to a certain part of a shipment which contained silver novelties in a closed box marked "hardware" and billed as "one cs hdw," as to which defendant claimed exemption from liability under Rev. St. U. S. art. 4281 (U. S. Comp. St. 1901, p. 2942), providing that if any shipper of "gold or silver in a manufactured or unmanufactured state, * * * gold or silver plate, or plated articles * * * shall lade the same" without giving notice of their true character and value and having same entered on the bill of lading, the master and owner of the vessel shall not be liable for the goods beyond the value and according to the character thereof so notified and entered, where the evidence did not show failure of the shipper to give the required notice and cause the entry to be made on the bill of lading, or negative the idea that the defendant may have received notice in some other way; such want of notice being a matter of avoidance, and the burden being therefore upon the defendant to prove same.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

**9. APPEAL AND ERROR (§ 882*)—BURDEN OF PROOF—CHANGE OF CONTENTION.**

Where a party assumes the burden of proving a fact, he will not be heard on appeal to say for the first time that the burden was on the other party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

**10. SHIPPING (§ 120*)—SHIPMENT OF GOODS —LIABILITY OF STEAMSHIP COMPANY.**

Where a steamship company receives a consignment for which it is not liable as a carrier by reason of Rev. St. U. S. art. 4281 (U. S. Comp. St. 1901, p. 2942), exempting a carrier from liability for certain goods wrongfully marked without notice to it of their value, it is still liable as a private bailee for hire for its failure to exercise ordinary care in the transportation and delivery of the goods.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 225, 226, 440–448, 466; Dec. Dig. § 120.*]

**11. SHIPPING (§ 132*)—SHIPMENT OF GOODS —EVIDENCE.**

Where, in a shipper's action against a steamship company, the plaintiff proved that defendant received the shipment in good order, and that a part of it was lost, and the part delivered was worthless, the burden was then upon the defendant to relieve itself from liability; the carrier's failure to make delivery in good condition being prima facie evidence of want of care and casting upon it the burden of proof.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by the G. A. Bahn Diamond & Optical Company against the Mallory Steamship Company and others. From a judgment for plaintiff and the unnamed defendants, the Steamship Company appeals. Affirmed, and motion for rehearing overruled.

Fiset & McClendon, of Austin, for appellant. W. P. Allen and D. H. Doom, both of Austin, for appellees.

RICE, J. The Bahn Diamond & Optical Company brought this suit against the Mallory Steamship Company, the Galveston, Harrisburg & San Antonio Railway Company, and the Houston & Texas Central Railroad Company, to recover damages to two shipments of merchandise transported from New York to Galveston by said Steamship Company, and from the latter point to Austin over the lines of the said railway companies, alleging that by the negligence of said defendants a part of said merchandise was lost and never delivered, and the balance was so damaged in transit as to be worthless upon its arrival at Austin. In addition to general demurrers and general denials, all of the defendants answered, setting up that said goods were shipped under special contracts containing a clause to the effect: First, that no carrier should be liable for loss or damage, except on its own line or its portion of said through route, and denying that loss or damage occurred while said property was in their possession. Second, the Steamship Company further answered that it operated its line between New York and Galveston, and that it transported said shipment without negligence, and delivered the same safely to its codefendants, whereby it was absolved from liability for injury, if any there was. Third, that as to the Ehrlich and Sinnock shipment, plaintiff ought not to recover because said shipment was in a closed box, the contents of which could not be inspected, and were therefore unknown to the defendants; that said box was labeled hardware, and delivered to it as such; that under the bill of lading it was not liable for loss or damage to any shipment consisting of articles manufactured in whole or in part from precious metals, or articles of extraordinary value; that said contents of said shipment consisted of articles of extraordinary value, manufactured in part from precious metals, viz., from silver; and further that said bill of lading provided that the company should not be held liable for any loss of any article not specifically rated in the published classification, unless by special agreement to do so, and the stipulated value of such articles were indorsed thereon; and that under such published classification articles manufactured from precious metals were scheduled not to be taken, and no rate was provided therefor. Fourth, as to both of the shipments said Steamship Company pleaded that the bill of lading exempted it from liability for all damages arising from dangers and perils of the sea, and that the injury to said shipments were caused by perils of the sea, and danger of navigation, for which reason no liability existed. There was a jury trial resulting in a verdict and judgment in favor of the Bahn Diamond & Optical Company for the sum of $420.15, with 6 per cent. interest thereon, and in favor of the rail-

way companies, from which this appeal is prosecuted.

The goods in question were transported from New York to Galveston in the "Denver," a ship of the Mallory line. While on its voyage it stopped at Key West, Fla., and on its departure from said port, the weather being clear and a slight wind blowing, while in the regular channel, said vessel gently grazed or struck some submerged object, which caused a leak in the compartment wherein the goods in question were stored. It became necessary, on account of this leak, to return to Key West for repairs, where the vessel was partly unloaded, a portion of the cargo being wet, and it was ascertained that the injury was perhaps caused by running against a coral reef in the harbor, which had probably been formed since the last survey thereof. It appears that at the point of contact a drainage flange was defectively fastened, on account of which the leak occurred. Being repaired in accordance with the finding of the board of surveyors, it proceeded on its route to Galveston, where it discharged its cargo, and the goods in question were found wet and damaged, and were delivered to the respective railways in such condition. Upon their receipt at Austin it is shown that they were so damaged on account of exposure to sea water and some acid as to be wholly worthless. A part of this shipment was lost en route and never received at Austin.

It is contended on the part of appellant by its second and fifth assignments that the court erred in submitting the question of the seaworthiness of the Denver for the consideration of the jury, and in failing to instruct them as requested by it; that the uncontroverted evidence showed that said steamship at the time of the accident, as complained of in its first assignment, was seaworthy, contending by its proposition thereunder that, since the uncontroverted evidence showed that said vessel was in fact seaworthy at the time it left New York, as well as at the time of the accident, the question of unseaworthiness thereof was therefore not an issuable fact, for which reason the court erred in submitting it as an issue, and in failing to give its peremptory charge to the effect that the same was in fact seaworthy.

[1, 2] We differ with appellant in this contention. While it is true that appellant showed that it held a certificate from the authorities to the effect that the vessel was seaworthy at the time it sailed, this was not conclusive evidence of the fact, and there was other evidence tending to show that the ship at the time it sailed was not in fact seaworthy. There was no storm prevailing at the time of the accident, but the ship was proceeding slowly in the regular channel down the harbor when it merely grazed the obstruction. If the flange had been properly attached, we think it would not have been displaced by the collision, and no injury would have resulted, from which we believe that the inference can be readily drawn that it was in this condition at the time the vessel started on its journey, and that an ordinary inspection would have disclosed its condition. These facts being true, the court did not err in submitting the issue to the jury, and refusing the peremptory instruction requested by appellant. Under the common law, carriers by water were liable as insurers, and were not allowed to exempt themselves from such liability by reason of clauses inserted in their shipping contracts. This has, however, been greatly modified by the act of Congress of February 13, 1893, known as the "Harter Act" (27 Stat. at Large 445) which is as follows, to wit:

"Section 1. That it shall not be lawful for the manager, agent, master or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he or they shall be relieved from liability for loss or damage arising from negligence, fault or failure in proper loading, stowage, custody, care or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect.

"Sec. 2. That it shall not be lawful for any vessel transporting merchandise or property from or between ports of the United States of America and foreign ports, her owner, master, agent or manager, to insert in any bill of lading or shipping document any covenant or agreement whereby the obligations of the owner or owners of said vessel to exercise due diligence (to) properly equip, man, provision and outfit said vessel, and to make said vessel seaworthy and capable of performing her intended voyage, or whereby the obligation of the master, officers, agents or servants to carefully handle and stow her cargo and to care for and properly deliver same, shall in any wise be lessened, weakened or avoided.

"Sec. 3. That if the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped and supplied, neither the vessel, her owner or owners, agent or charterers shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel, nor shall the (sic) vessel, her owner or owners, charterers, agent, or master be held liable for losses arising from dangers of the sea or other navigable waters, acts of God or public enemies, or the inherent defect, quality or vice

of the thing carried, or from insufficiency of package or seizure under legal process, or from loss resulting from any act or omission of the shipper or owner of the goods, his agent or representative, or from saving or attempting to save life or property at sea, or from any deviation in rendering such service."

This act has been construed by the Supreme Court of the United States in the case of Wuppermann v. The Carib Prince, 170 U. S. 655, 18 Sup. Ct. 753, 42 L. Ed. 1181, and The Caledonia, 157 U. S. 124, 15 Sup. Ct. 537, 39 L. Ed. 644, where the bill of lading containing the exemption specifies no time, to mean that the exemption from unseaworthiness has reference to prospective injuries which arise after the vessel has left the port, and does not relate to its condition while in port; or, if it be shown that its condition of unseaworthiness existed before going out or before the voyage commenced, then the condition in the bill of lading in this respect does not apply. See The Abazia (D. C.) 127 Fed. 495; The Caledonia, supra; and Martin v. The Southwark, 191 U. S. 1, 24 Sup. Ct. 1, 48 L. Ed. 65.

[3] Nor do we think that the trial court committed error, as assigned by appellant, in that part of its charge wherein it instructed the jury that the burden of proof was upon the Steamship Company to show that said ship, upon which the goods were carried from New York to Galveston, was seaworthy for the voyage in contemplation, and that the damage to said goods, if any, was done by sea water getting into the hold of said ship. The plaintiff having shown the delivery of the goods to the initial carrier in good order, and a delivery by it to the last connecting carrier in a damaged condition, a prima facie case, so far as the plaintiff was concerned, was made out against all the carriers, and the burden of proof devolved upon each and all of them to show that the damage was not the result of negligence on their part. See H. &. T. C. R. R. Co. v. Bath, 40 Tex. Civ. App. 270, 90 S. W. 555; M., K. & T. Ry. Co. v. Clayton, 84 S. W. 1069; Bibb v. M., K. & T. Ry. Co., 37 Tex. Civ. App. 508, 84 S. W. 663. Besides this, it is held in Martin v. The Southwark, supra, that the shipowner having invited the shipment on the belief existing in the minds of the public that his vessel was seaworthy, of which the shipper had no means of knowledge, and can have none, the burden of proof in this respect is upon such owner.

[4] There being some evidence tending to show that the damage was partly caused by acid coming in contact with the goods while in transit, it was not error for the court to submit a charge covering this phase of the case, for which reason the fourth assignment is overruled.

[5] Appellant complains in its sixth assignment of the refusal of the court to give its special charge, wherein it requested the court to instruct the jury that the appellant was not bound, as matter of law, to make the steamship Denver seaworthy for the voyage from New York to Galveston, but, as to seaworthiness, was only required to exercise due diligence to make said vessel in all respects seaworthy, directing them that if they believed from the evidence that the appellant, prior to said voyage, had exercised such diligence to make the same in all respects seaworthy, then it would not be liable for any unseaworthiness, even though said vessel were in fact not seaworthy; but the liability of said defendant, if any, in such event, would only be such as defendant would be under in case said vessel were in all respects seaworthy. This contention is based upon the third section of the Harter Act. It is contended on the part of appellees, however, that this charge was properly refused on the ground that the evidence failed to raise this issue; but, on the contrary, established the fact that appellant had failed to use due diligence to ascertain whether said vessel was seaworthy or not prior to the commencement of said voyage. A careful review of the evidence sustains this contention. Notwithstanding the fact that appellant shows that an inspection was made the day before the vessel sailed, still there was nothing to show the character or kind of inspection. On the contrary, the proof shows that the vessel had been in use since 1901, during which time, it seems, it had been more than once in dry dock, and the defect in the drainage flange must have been apparent and known to appellant, or by the exercise of reasonable diligence could have been known. It appears that, instead of said flange being riveted with bolts to the ship, the same was merely closely fitted in, and said holes covered with cement; which fact must likewise have been known, or by the exercise of reasonable diligence could have been known, to the shipowners. The mere fact that the certificate had been issued after the vessel had been loaded indicates that the inspection must have been a superficial one, and could not have extended to the hull to which the flange should have been fastened with rivets. This being true, we think the evidence did not warrant the submission of this issue, and the court did not err in refusing said charge.

[6] The court refused to give a peremptory charge asked by appellant to find in its favor as to the Ehrlich and Sinnock shipment, on the ground that said shipment contained articles of sterling silver of extraordinary value, presented for shipment in a closed box which it could not inspect, claiming exemption from liability by reason of the clause in its bill of lading, which action of the court is complained of in its seventh assignment; but, on the contrary, submitted this as an issue to the jury, which is made the subject of the eighth assignment. The bill of lading

describes this shipment as "one cs hdw," and contained the following limitation: "No carrier hereunder will carry or be liable in any way for any document, specie or other article of extraordinary value not specially rated in the published classification, unless a special agreement to do so, and a stipulated value of the articles are indorsed thereon." While it may be admitted that there was testimony to the effect that the goods were of sterling silver, Christmas novelties, etc., and were shipped in a closed box, marked "hardware," still, this charge, we are inclined to believe, was properly refused for several reasons, as contended by appellees: In the first place, there is no evidence in the record showing, or tending to show, that the shipper failed to give the notice required by law, and, in order for the appellant to claim the exemption by reason of a failure to give notice, the burden would be upon it to establish the fact that no notice was given; second, the feature presented by the special charge is fully covered by and embraced in the general charge of the court. Nor is it shown that the appellant would have refused the shipment if it had known its contents, or would have placed it in a different part of the ship from that in which it was carried. Besides, it is questionable whether, under the law, appellant could have thus limited its liability. See Knott v. Botany Worsted Mills, 179 U. S. 69, 21 Sup. Ct. 30, 45 L. Ed. 90; Calderon v. Atlas Steamship Co., 170 U. S. 272, 18 Sup. Ct. 588, 42 L. Ed. 1033; Act of Congress, supra.

[7] The jury returned a verdict in behalf of plaintiff for the sum of $420.15, together with 6 per cent. interest from December 4, 1907, which was the date of the shipment. This is assigned as error on the ground that the verdict was not responsive to the charge. The petition prayed for the recovery of interest, but the charge failed to embrace this feature. As a general rule, where goods are intrusted to a carrier and are not delivered according to contract, the value of goods, with interest thereon from the day when they should have been delivered, is the measure of damages. 2 Sedg. on Damages, 94. This rule is quoted with approval in Houston & Texas Central R. Co. v. Jackson, 62 Tex. 209. It has been held that the allowance of interest was not an improper mode of computing damages. Bradford v. Mann, 1 Posey, Unrep. Cas. 228. It has likewise been held that, where the jury allowed interest as damages, the fact that they designated it as interest, instead of damages, affords no ground for reversal. In the case of Watkins v. Junker, 90 Tex. 587, 40 S. W. 12, where the court peremptorily instructed a verdict in behalf of plaintiff for interest, Chief Justice Brown said: "It has been generally held by the courts that the jury may allow interest upon damages arising out of the breach of a contract made by a carrier for the carriage and delivery of goods"—citing H. & T. C. Ry. Co.

v. Jackson, supra; Wolfe v. Lacy, 30 Tex. 351; Robinson v. Transportation Co., 45 Iowa, 470. He further says: "If interest be properly an element of damages in any case, then it is so as a matter of law. Whether the case is such that the law makes it applicable is a question of fact for the jury; but whether or not it is to be allowed, if the facts exist, is a question of law that should not be left to the jury. We think that it is an inconsistency to say that a right exists which a jury may or may not enforce as they deem proper; and we believe that practically the courts have come to the proposition that, in all cases where the measure of recovery is fixed by the condition existing at the time that the injury is inflicted, the person entitled to recover has also the right to have compensation for the detention of the money to which he is entitled by reason of the wrong done to him."

It would therefore seem in the present case that, the jury having determined that the appellee was entitled to recover the value of the goods, in order to fully compensate him, he was likewise entitled, as matter of law, to recover interest thereon from the date of the injury. This being true, and the jury having so found, it seems to us that it is immaterial whether or not the court directed them to so find; for which reason we are not disposed to disturb the verdict.

The remaining assignments have been carefully considered, but are regarded as not well taken and are overruled.

Finding no error in the proceedings of the trial court, its judgment is in all things affirmed.

Affirmed.

### On Rehearing.

It is urgently insisted by appellant in its motion for rehearing that the court erred in holding that the trial court did not commit error in refusing its special charge to the effect that, if the jury should believe that it exercised due negligence to make the vessel in all respects seaworthy, then the defendant would not be liable for any unseaworthiness thereof, even though the same were in fact unseaworthy; basing its contention upon the Harter Act, set out in our original opinion. We think the evidence in this case showed that the injury to the goods resulted from the latent defects in the ship, rendering it unseaworthy, and that this condition existed before its departure from New York. This being true, the charge requested ought not to have been given; for the reason that the third section of the Harter Act provides that, if the owner of the vessel shall exercise due diligence to make the same in all respects seaworthy, etc., then its owner shall not be responsible for damages or loss resulting from faults or errors in navigation, or in the management of said vessel, or for losses arising from dangers of

the sea, acts of God, public enemies, or inherent defect or vice in the thing carried, etc. If the injury to the goods had resulted from any of the causes as designated in said section of the statute, then appellant's contention would have been correct, and the charge requested should have been given. See Wuppermann v. The Carib Prince, 170 U. S. 655, 18 Sup. Ct. 753, 42 L. Ed. 1181, wherein Mr. Justice White, in discussing this statute, after quoting the third section thereof, makes use of the following language: "The exemption of the owners or charterers from loss resulting from 'faults or errors in navigation,' or in the management of the vessel, and for certain other designated causes, in no way implies that, because the owner is thus exempted when he has been duly diligent, thereby the law has also relieved him from the duty of furnishing a seaworthy vessel. The immunity from risks of a described character, where due diligence has been used, cannot be so extended as to cause the statute to say that the owner when he has been duly diligent is not only exempted in accordance with the tenor of the statute from the limited and designated risks which are named therein, but is also relieved, as respects every claim of every other description, from the duty of furnishing a seaworthy ship."

In the instant case, under the above holding it devolved, as we think, upon appellant (since the injuries did not result to the goods from any of the designated causes which would render it exempt under the third section of the Harter act, the only section of said act affecting domestic shipments) not only to exercise due diligence to furnish a seaworthy vessel, but it became its absolute duty to do so; for which reason we think the charge was properly refused.

[8] It is also insisted by appellant in said motion that the court erred in overruling its seventh assignment, wherein it complained of the action of the trial court in refusing to peremptorily instruct the jury to find in its favor as to the Ehrlich and Sinnock shipment, contending that these goods came within the classification enumerated in article 4281 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 2942); said shipment consisting of sterling silver novelties, improperly billed as hardware. The statute referred to provides, in substance, that if any shipper of certain articles, which are specifically named, and among which are embraced silver novelties and goods manufactured of silver, "shall lade the same as freight or baggage on any vessel without at the time giving notice to its owner, master or agent of the true character and value of the property shipped, and having the same entered upon the bill of lading therefor, the master and owner of such vessel shall not be liable as carriers

thereof in any form or manner." We think this charge was properly refused for two reasons, if no other: First, because we believe that the burden of proof was upon the appellant under this statute to show a failure on the part of the shipper to give the notice required, and cause the entry to be made in the bill of lading; and there was no satisfactory proof showing that this burden had been discharged by appellant. So far as the record discloses, this notice may have been given to appellant. It is true that the box was marked "hardware." It is also true that the agent of the express company who delivered the goods to appellant testified that he did not know what the box contained, but he did not state that he so told Wilson, the agent of appellant who received same, and the latter was not called as a witness. The evidence, therefore, does not negative the idea that appellant may have received notice in some other way. Appellant pleaded this want of notice as a defense in avoidance of its liability. This being true, the burden of proof devolved upon it to show such want of notice. Matters of avoidance must be proven by the party pleading same. See Holloman v. White, 41 Tex. 61. "The general rule is that whoever has the affirmative of the issue as determined by the pleadings, or, where there are no pleadings, by the nature of the investigation, has the burden of proof. It never shifts from that party, either in civil or criminal cases. Where a party erroneously assumes the burden of proof as to a particular allegation, or the burden of evidence as to a particular fact, the mistake will not be corrected in the appellate court." 16 Cyc. 926B.

[9] "Where a party has assumed the burden of proving a fact, he will not on appeal be heard to say for the first time that the burden was on the other party." 2 Cyc. 675; Stewart v. Outhwaite, 141 Mo. 562, 44 S. W. 326.

So that, if in fact the burden did not rest upon appellant, still, where he has assumed it in his pleadings in the trial court, he cannot be heard to say that the burden is not upon him upon appeal, as indicated by the authorities just quoted.

[10] But, irrespective as to whether we are correct as to this, let us concede, for the sake of argument, that the burden of proof to show notice to appellant of the character and value of the shipment was on appellee, and that he has failed to show such notice, and therefore that the appellant *is not liable in any form or manner as carrier*, as the statute indicates; does this, perforce, relieve it of all liability in every other capacity or respect? We think not. Prior to the enactment of the statute in question, the defendant, as carrier, would have been liable to plaintiffs for any loss, except such as was attributable to the act of God or the public

enemy. The statute merely relieves appellant where the notice is not given and entry made as required thereby from any liability as carrier, but does not attempt to relieve it from any duty to him as bailee. It was not compelled to receive the package if the notice was not given, but, having seen proper to do so in the absence of such notice, did this voluntary acceptance thereof impose upon it any duty? We think so. It thereby became a private bailee for hire, and at least owed the duty to appellee of exercising ordinary care in the transportation and delivery of said goods. Failing in this, it was certainly liable to the owner for negligence resulting in loss or damage to the shipment.

This doctrine is laid down in the case of Wheeler v. Oceanic Steam Navigation Co., 125 N. Y. 155, 26 N. E. 248, 21 Am. St. Rep. 729, and cases there cited. To have given the charge would have had the effect of saying to appellee: "You have seen fit to ship these goods in a box marked hardware, without giving the statutory notice. It is true, we have received the same for the purpose of shipment, and have taken payment therefor, yet we owe you no duty whatever in regard thereto. We can convert them to our own use, throw them overboard, do as we please with them, because by your failure to give such notice you have been penalized to the extent of their value and have forfeited all rights therein." Such a construction does not comport with honesty or fair dealing, and the courts will not give such interpretation to a statute where it appears that it is open to another and more reasonable one, and which will not defeat the ends of justice; but would seemingly accord with the purpose and object of the lawmakers. We think that Congress merely intended to relieve shipowners, under such circumstances, of liability as common carriers, leaving untouched their liability as bailees. So, having received the goods for transportation, appellant, as bailee for hire, was required to exercise ordinary care to safely transport and deliver same. A failure to do so would constitute negligence, for which it would be responsible in damages.

[11] The box containing the goods, as the evidence shows, was received by appellant in good order. Some of its contents were lost and those delivered were worthless. This made a prima facie case against appellant, for which it must excuse itself (see Hull v. Chicago Ry. Co., 41 Minn. 510, 43 N. W. 391, 5 L. R. A. 587, 16 Am. St. Rep. 722); for the delivery of the goods at point of destination in good condition is necessary to relieve the carrier as such. Scheu v. Benedict, 116 N. Y. 510, 22 N. E. 1073, 15 Am. St. Rep. 426. Nondelivery by the carrier is prima facie evidence of want of ordinary care, and casts upon him the burden of proof. Shenk v. Philadelphia S. P. Co., 60 Pa. 109, 100 Am.

Dec. 541; Tardos v. The Toulon, 14 La. Ann. 429, 74 Am. Dec. 435. This being true, under the evidence an issue was left for the determination of the jury. Wherefore it would have been error to have given the peremptory charge requested.

The motion for rehearing is therefore overruled.