The deviation from that port was neither necessary nor within the objects intended to be secured by the clause in the bill of lading above referred to. It is essentially unjust that such a deviation should be upheld at the expense of the cargo when it is not necessary to the safety of ship and passengers, but is merely for their convenience and the increased profit of the salvor. The damages actually sustained by the cargo beyond that incident to towage to Halifax should, therefore, be allowed.

(3) The stipulation in this case that the limit of liability of the shipowner should "not exceed one pound sterling in respect to each animal shipped" is not a stipulation that can be brought within the principle of the case of Hart v. Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151. This stipulation is not, like that, an agreed valuation put upon the article carried. The amount of one pound sterling was here less than the freight paid in advance. It cannot be upheld as a reasonable stipulation in liquidation of damages. Calderon v. Steamship Co., 16 C. C. A. 332, 69 Fed. 574, affirming 64 Fed. 874. It does not purport to have any such object. It is a mere stipulation that the carrier shall not be liable beyond a certain small sum. See Primrose v. Telegraph Co., 154 U. S. 1, 14 Sup. Ct. 1098. As against negligence of the carrier, the invalidity of such a stipulation has been adjudged in Scruggs v. Railroad Co., 18 Fed. 318, and Eells v. Railway Co., 52 Fed. 903. It is equally invalid as against an intentional deviation, or what is in legal effect the same thing, an unnecessary and unjustifiable extension of a salvage service.

The libellants are entitled to decrees for the deterioration caused by this unnecessary delay to the cattle themselves, and also for the fall in market price after April 16th (Railroad Co. v. Estill, 147 U. S. 591, 616, 13 Sup. Ct. 444; The Caledonia, 157 U. S. 124, 139, 15 Sup. Ct. 537, affirming 43 Fed. 681, 50 Fed. 567), by which time at least the America would ordinarily have arrived from Halifax. If the parties cannot agree upon the amount, a reference may be taken for the purpose.

Decrees accordingly.

---

THE GAMBETTA.

NEW ORLEANS, B. R. M. & C. A. STEAMSHIP CO., Limited, v. WEITZIN et al.

(Circuit Court of Appeals, Fifth Circuit. February 17, 1896.)

No. 419.

1. SALVAGE COMPENSATION—ELEMENTS OF COMPUTATION.
   The exact value of property saved, where large, is but a minor element in computing salvage, and, as it increases, the rate per cent. given is rapidly reduced. It is compensation for actual service rendered, and a reasonable gratuity for the benefit of commerce, that is contemplated, and not a fixed percentage of the property saved. The Rita, 10 C. C. A. 629, 62 Fed. 764, followed.

2. SAME.

An award of $2,216.66⅔ to a steamer for towing, under favorable conditions, a disabled steamer from a point in the Caribbean Sea, near the Island of Cozumel, about 520 miles, to the mouth of the Mississippi, *held* abundantly sufficient, it appearing that the service occupied about two and a half days, and delayed the salving vessel about 12 or 14 hours on her trip to New Orleans, and that her value was about $100,000, and that of her cargo $8,600, while the salved steamer was worth $25,000, and her cargo $1,500.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

This was a libel in rem by the New Orleans, Belize Royal Mail & Central American Steamship Company, Limited, against the steamship Gambetta, Hjalmar Weltzin and others, claimants, to recover for salvage services rendered by libelant's steamer Breakwater. The district court rendered a decree awarding salvage in the sum of $2,216.66⅔, and the libelant appealed, claiming that the amount was insufficient.

J. Ward Gurley, for appellant.
Horace L. Dufour, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

BOARMAN, District Judge. Libelant claims salvage compensation in the sum of $6,000 for rescuing defendant steamship Gambetta from a point in the Caribbean Sea, near to the Island of Cozumel, and for towing her from that point to the mouth of the Mississippi river, a distance of about 520 miles. The evidence shows that the steamer Breakwater, while on her voyage from New Orleans to the port of Belize, observed the Gambetta, lying outside of, and a few miles distant from, the usual track of vessels, flying distress signals; that she was disabled so that she could not rescue herself from the situation she was then in by the use of her steam power; that the Breakwater, on going to the steamer Gambetta, was engaged by the captain thereof to tow her to the mouth of the Mississippi river; that the Breakwater proceeded on her voyage to the port of Belize, and, after having there discharged her outward cargo, and having taken on her freight, etc., for New Orleans, on returning to the Gambetta, she found her but little, if at all, imperiled by her conditions, immediate surroundings, etc., and that, having made fast to her, proceeded on her return voyage, with said vessel in tow, at 12:15 p. m. on May 12th, and reached the mouth of the Mississippi river safely on May 14, 1894, at 6:45 p. m., and left the said steamship Gambetta safely anchored at Port Eads at 7:45 p. m. on said 14th day of May; that the Breakwater's inward voyage was made under favorable conditions of wind and sea, and she was delayed about 12 or 14 hours in consequence of the tow. The value of the Breakwater was about $100,000, and cargo $8,600. The value of the Gambetta, when delivered by her salvors, was about $25,000, and her cargo $1,500.

In The Rita, 10 C. C. A. 629, 62 Fed. 764, this court sums up the several considerations to be observed in determining the amount of a salvage award:

"The exact value of the property saved, where large, is but a minor element in computing salvage, and, as it increases, the rate per cent. given is rapidly reduced. It is a compensation for actual service rendered, and a reasonable gratuity for the benefit of commerce, that is contemplated, and not a fixed percentage of the property saved."

In Murphy v. The Suliote, 5 Fed. 100, Justice Bradley said:

"The amount of salvage that ought to be allowed for the services performed depends upon several considerations; as, first, the extent and danger of the services; secondly, the risk to which the vessel and other property employed in the service were exposed; thirdly, the value of the property saved, and the risk of destruction by which it was imperiled."

In The Sandringham, 10 Fed. 556:

"The amount awarded as salvage comprises two elements, viz. adequate remuneration, and a bounty given to encourage similar exertions in future cases; the relative amount to depend on the special facts and merits of each case." See cases cited therein.

We have carefully examined the evidence in this case, and, applying the rules of law quoted above, we find that the services performed by the libelant were a low order of salvage, and that the award made in the district court is an abundantly sufficient allowance for such services as were rendered by libelant. The decree of the district court is affirmed.