### KUHNHOLD v. COMPAGNIE GÉNÉRALE TRANSATLANTIQUE.

(District Court, S. D. New York. February 27, 1918.)

1. CONTRACTS ⬡127(4)—OUSTING COURT OF JURISDICTION.
   A provision in a bill of lading for maritime shipment, by which a foreign court is made the sole forum in case of litigation over the interpretation of the bill of lading, is void.

2. STATUTES ⬡290—FOREIGN LAWS—BURDEN OF PROOF.
   The burden of proving the law of a foreign jurisdiction is on him who asserts or relies on it.

3. SHIPPING ⬡140—BILLS OF LADING—JEWELRY.
   Where a bill of lading provided that the ship was not responsible for gold, jewelry, etc., unless there be signed a regular bill of lading with express indication of the value of the articles, the vessel is liable where the bill of lading described the articles, as watches, etc., and the vessel owner contended there was an agreement as to value.

4. SHIPPING ⬡141(1)—CARRIERS—LIMITATION OF LIABILITY.
   Rev. St. § 4281 (Comp. St. 1916, § 8019), declaring that the masters and owners of vessels shall not be liable as carriers for jewels not declared as such, etc., merely relieved carriers by water of liability as common carriers, not of their liability as bailees, and hence where carrier not only failed to account for a loss, but in effect conceded that a loss of jewelry was occasioned by its own fault, it is liable.

5. SHIPPING ⬡140—LIMITATION OF LIABILITY.
   A provision in a bill of lading limiting the liability of a vessel to 1,000 francs per package, which was applicable to a shipment of jewelry because the value was not declared, is valid; the limit being reasonable.

6. SHIPPING ⬡140—CARRIERS—LIMITATION OF LIABILITY.
   Where a bill of lading limiting the carrier's liability to 1,000 francs per package in case value was not declared, provided that the indemnity should be calculated pro rata, etc., held, that the amount recoverable should bear that proportion to the indemnity that the amount of the loss bore to the value of the entire package.

In Admiralty. Libel by William Kuhnhold against the Compagnie Générale Transatlantique. Decree for libelant, as indicated.

Theodore L. Bailey and Oscar S. Blinn, both of New York City, for libelant.

Joseph P. Nolan, of New York City, for respondent.

MAYER, District Judge. There is no dispute as to the essential facts; the parties having stipulated in respect thereof.

On or about September 17, 1915, at Bordeaux, France, the Gruen Watch Manufacturing Company delivered to respondent (hereinafter

called French Line), for shipment to New York, nine cases of goods, for which one bill of lading was given. The shipment was made through the American Express Company, and consigned to D. Gruen & Sons of Cincinnati, Ohio. All of the nine cases were delivered ex steamship Espagne at New York, on or about October 4, 1915, but one of the cases (marked 274) was delivered short a certain part of the goods (watches and watch cases) which had been originally shipped in said case at Bordeaux. The actual invoice value of the missing goods was $826.60, but the invoice value was not stated in the bill of lading. It is also stipulated between the parties that the full invoice value of all the goods contained in case marked 274 at the time of shipment was 13,478.50 francs, or approximately the equivalent of $2,695.70. At the time of the trial the parties did not know the invoice value of the remaining eight cases shipped under the same bill of lading, but agreed that they would stipulate as to such value in the event that the court should so construe the bill of lading as to make the value of these eight cases relevant and necessary to the ascertainment of damages.

D. Gruen & Sons of Cincinnati, Ohio, assigned their claim to libelant. In the bill of lading delivered by the French Line appears the following:

"Art. 11. In case of losses or irregularity in the delivery, for which they would be responsible, from any cause or at any place whatever, the captain and the company can only be held to reimburse for each package lost, the intrinsic value at the loading port, calculated on the presentation of the original invoice, or upon the declaration on the bill of lading, without any profit, damages, commission, interest, etc. In default of declaration of value on the bill of lading, it shall not be allowed in any case more than 'one franc per cubic decimeter or per kilo., at the choice of the company, nor more than 1,000 francs per package. In case of damage or shortages for which they may be responsible, the captain and the company can only be held to pay an indemnity calculated pro rata on the sum to be paid in case of loss, according to the foregoing various stipulations."

The expression "it shall not be allowed," if properly and freely translated, means "there shall not be allowed." It is also provided, under rule 5 of the bill of lading, that:

"The ship is not responsible for gold, silver, precious metals, cash, titles, jewelry, works of art and similar articles of value, unless there be signed a regular bill of lading with express indication of the value of the said articles."

Article 18 provides:

"All litigation arising from the interpretation of the execution of the present bill of lading shall be judged according to French law and by the court of the place indicated on the bill of lading, which court the shippers and the claimants formally declare they accept as competent."

[1] 1. The provision under article 18, by which the Bordeaux court is made the sole forum, must be construed as void in this jurisdiction. Gough v. Hamburg, etc., Co. (D. C.) 158 Fed. 174; United States Asphalt Refining Co. v. Trinidad Lake Petroleum Co. (D. C.) 222 Fed. 1006.

[2] 2. Whether the bill of lading under article 18 should be construed in accordance with the French law need not be discussed, because no testimony was introduced as to the French law and the prop-

osition has now become elementary that the burden of proving the law of a foreign jurisdiction is upon him who asserts or relies upon it.

[3, 4] 3. The French Line seeks to escape liability upon the ground that the shipment was one of jewelry, and therefore the French Line is excused, under the provisions of rule 5 of the bill of lading and section 4281 of the Revised Statutes (Comp. St. 1916, § 8019). The bill of lading clearly described this package as "caisse mouvements et boites moutres." It is thus entirely clear that the nature of the contents of the package was made known, and, as the French Line insists that in law there is an agreement as to value, all of the requirements of rule 5 were conformed with. In any event, it is now settled that section 4281 is to be construed so as to relieve the carrier only of its liability as a common carrier, and not of any liability as a bailee. Wheeler v. Oceanic Steam Navigation Co., 125 N. Y. 155, 26 N. E. 248. 21 Am. St. Rep. 729; Mallory S. S. Co. v. Bahn (Tex. Civ. App.) 154 S. W. 282; La Bourgogne, 144 Fed. 781, at page 786, 75 C. C. A. 647, affirmed in 210 U. S. 95, 28 Sup. Ct. 664, 52 L. Ed. 973.

As under this head the liability of the French Line would be that of a bailee, libelant must recover because the bailee has not only not accounted for the loss, but has, in effect, affirmatively conceded that the loss was occasioned by its own fault.

[5] 4. The foregoing having been disposed of, there is now to be considered the important question in the case. Libelant attacks as void the provision of the bill of lading limiting the liability, while the French Line insists that the limitation is valid and fully within recognized authority.

It will be noted that in the first part of article 11 provision is made for those cases where the original invoice or the bill of lading declares the value. Then follow the clauses relating to those cases where value is not declared. In the latter event, the company has the choice of determining whether to allow the valuation per standard of measurement or per standard of weight, providing, however, that in no instance shall the damage exceed 1,000 francs per package.

The language is simple and clear. It is entirely within the power of the shipper to declare value, and, in such event, in case of loss, the intrinsic value at the loading port is allowed. If the shipper, however, fails to declare value, and thus leaves the carrier entirely in the dark, in that regard, the shipper is fully informed by the bill of lading what the maximum allowance for loss will be, with the reservation to the carrier at its option to make good either at so much per measurement or so much per weight; the assumption being, of course, that the carrier will choose the lesser figure.

Since Hart v. Pennsylvania Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, limited liability clauses have been held good, if these clauses amount to an agreement and are reasonable. Where, however, the carrier, utterly irrespective of declared value, places an arbitrary limitation on his liability, the courts have held such limitations void.

Scruggs v. Baltimore & O. R. Co. (C. C.) 18 Fed. 318 (which has been frequently cited), is really not in point, because the court seems

to have determined the case upon the oral agreement between the parties, irrespective of the provisions of the bill of lading; but, if otherwise construed, it cannot be regarded as authority in view of the later decision in the Hart Case, supra.

In Eells v. St. Louis, K. & N. W. Ry. Co. (C. C.) 52 Fed. 903, the clause under consideration did not involve a failure to declare value, but limited liability to a sum not to exceed $100, unless the parties made an agreement for a larger sum. Obviously that clause is not similar to the clause in the bill of lading in the case at bar.

In Schwarzchild v. National S. S. Co. (D. C.) 74 Fed. 257, the limit of liability of the shipowner was not to exceed £1 sterling in respect of each animal shipped, and was obviously a stipulation irrespective of any agreed value. So, also, The Gambetta, 74 Fed. 259, 20 C. C. A. 417.

There is nothing in Lines v. Atlantic Transport Co., 223 Fed. 624, 139 C. C. A. 170, which helps libelant, because the point in that case was that the clause under consideration was void for the reason that it was capable of the construction that the carrier would not, in any event, be liable to any extent whatever for any goods which were in fact of a greater value than £20 per package. This clause was characterized by Judge Lacombe as "a double-barreled form of exemption"; the purpose being to have a clause so ambiguous that it might free the carrier in the British courts under one construction, and also free it in the American courts under another construction. The authorities in support of the validity of the French Line bill of lading clause are numerous and need only be cited. Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Wells Fargo & Co. v. Neiman-Marcus Co., 227 U. S. 469, 33 Sup. Ct. 267, 57 L. Ed. 600; Kansas So. Ry. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; Mo., Kans. & Tex. Ry. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Great Northern Ry. v. O'Connor, 232 U. S. 508, 34 Sup. Ct. 380, 58 L. Ed. 703; Boston & Maine R. R. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593; Atchison, etc., Ry. Co. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901; Pierce v. Wells Fargo & Co., 236 U. S. 278, 35 Sup. Ct. 351, 59 L. Ed. 576; Hohl v. Norddeutscher Lloyd, 175 Fed. 544, 99 C. C. A. 166; Cau v. Tex. & Pac. Ry. Co., 194 U. S. 427, 431, 432, 24 Sup. Ct. 663, 48 L. Ed. 1053; Reid v. American Express Co., 241 U. S. 544, 36 Sup. Ct. 712, 60 L. Ed. 1156. To these may be added (at least for the time being) The Koan Maru, 251 Fed. 384, filed December 31, 1917.

Of course, in the cases just above referred to, the clauses are phrased in different forms; but the underlying principles, so far as here applicable, are the same. The point is that the clause now under consideration amounts to an agreement by which the carrier says to the shipper:

"If you declare the value of the goods, you are shipping, I herewith agree with you upon the basis on which I will pay you damages for loss; but, if you do not declare the value, then I agree with you upon another basis whereby I limit my liability, so that I will pay you the value of your goods

only up to a certain amount, irrespective of the value of your goods beyond that amount, because you have not given me any information as to the value of your goods."

As the limit of 1,000 francs is reasonable, the clause must be held valid.

[6] The final question is as to the apportioning or prorating of damage. The contention of the French Line is that the apportionment clause contemplates taking into consideration the value of the entire shipment, or, to illustrate: That if the entire shipment of nine packages were worth $10,000, then libelant would be entitled to only $826.60/10000ths. This obviously is not the meaning of the apportionment clause. "Per package" undoubtedly must mean per each individual package. "Shortages" is a word which applies to the contents of an integral package. I think the clause is clear; but, if there is any ambiguity, the doubt must be resolved against the carrier, who framed the printed bill of lading. As the lost goods were in the case No. 274, and the value of all the goods in that case was approximately $2,695.-70, and the value of the lost goods was $826.60, and the limitation is 1,000 francs per package, or in round numbers, $200, libelant is entitled to recover $826.60/2695.70ths of $200. The accurate computation can be worked out by counsel.

Libelant may therefore have a decree as indicated, with costs.