AMERICAN EXPRESS COMPANY, Appellant, v UNITED STATES
LINES, INC. et al., Respondents, et al., Defendant.

First Department, July 31, 1980

## APPEARANCES OF COUNSEL

*Dennis M. Perlberg* of counsel *(Simon Greenhill* and *John M. Speyer* with him on the brief; *Greenhill, Speyer & Thurm,* attorneys), for appellant.

*Peter J. Zambito* of counsel *(Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito,* attorneys), for United States Lines, Inc., respondent.

*James M. Hughes* of counsel *(Bigham Englar Jones & Houston,* attorneys), for Sullivan Security Services, Inc., respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

Seeking $483,071 in damages, representing the amounts paid to holders in due course, plaintiff sues to recover for the theft of two cases of travelers checks which it had delivered to United States Lines at Pier 62, North River, for overseas shipment on one of its ocean carriers. A Wells Fargo armored truck had delivered the checks on April 12, 1967. The vessel, which was to arrive by April 13, was not yet in port. Sometime during the early morning hours of April 13, before the ship's arrival, armed robbers stole the checks. At the time the checks were being stored in an open cargo crib on the pier under the care of Sullivan Security Services, Inc. which, pursuant to contract, provided watching services for United States Lines.

The parties had dealt with each other for years in similar transactions. A dock receipt and short-form bill of lading, both prepared by plaintiff on preprinted forms supplied by United States Lines, contained the legend "Special Stowage Ships Strongroom c/o Chief Mate." At the time of delivery a representative of United States Lines signed each of these shipping documents, signifying formal issuance. The dock receipt described the packages as "two cases financial papers." Plaintiff's export declaration, not part of the contract of carriage and for use solely for official purposes authorized by the Secretary of Commerce, listed the cost of the checks as $668. The dock receipt stated that the bill of lading "shall constitute the contract."

The short-form bill of lading incorporated by reference the terms contained in the carrier's regular long-form bill of lading, which, with its tariff, was on file with the Federal Maritime Commission, and expressly provided that it was subject to the Carriage of Goods by Sea Act [COGSA] (US Code, tit 46, § 1300 *et seq.*). COGSA limits a carrier's liability for loss to $500 per package, unless the true value is declared. (US Code, tit 46, § 1304, subd [5].) While COGSA provides that this limitation shall be in effect from loading to discharge of goods, the long-form bill of lading contained a clause that the COGSA limitation shall govern before loading and after discharge and throughout the entire time that the goods are in the carrier's custody. Such an extension of the carrier's limitation of liability is permitted under COGSA. (US Code, tit 46, § 1307.) The long-form bill of lading also contained a provision,

known as the Himalaya clause, extending the benefit of exemptions from and limitations of liability under the bill of lading to contractors employed by the carrier in the performance of work or services undertaken by the carrier in the contract of carriage.

Plaintiff contends that the $500 per package limitation is unavailable to United States Lines and its subcontractor, Sullivan, because the terms of the contract of carriage prohibited stowage of the checks anywhere but in the vessel's strongroom. It claims, therefore, a deviation which would oust the COGSA limitation of liability as extended by the long-form bill of lading. On the other hand, United States Lines contends that the special stowage provision of the dock receipt and short-form bill of lading was intended to apply only while the cargo was on board the vessel.

On a motion for summary judgment Special Term agreed with the latter contention and applied the $500 per package limitation. We cannot agree, and find that issues of fact were raised as to whether the term of the contract of carriage, "Special Stowage Ships Strongroom c/o Chief Mate", imposed an obligation to place the cargo, when received, on the vessel, and as to whether delivery should not have been accepted if the vessel was not in port when the cargo was tendered.

Significantly, on this issue, in testimony before the Waterfront Commission, United States Lines' dock boss interpreted the "Special Stowage" provision as meaning "we will take it directly from the truck and stow it aboard the ship" and expressed his belief that "the shipment should have been refused and brought back." If the carrier deviates from its agreement it is liable for the full amount of damages sustained without the benefit of COGSA's $500 per package limitation. (Encyclopedia Britannica v SS Hong Kong Producer, 422 F2d 7.) Moreover, the doctrine of deviation recognizes, as a quasi-deviation, deck stowage of cargo that the carrier had agreed to carry below deck, and for which it becomes liable in full as an insurer of the ship's cargo. (Iligan Integrated Steel Mills v S. S. John Weyerhaeuser, 507 F2d 68, 72.) For purposes of establishing quasi-deviation, we fail to see any significant distinction between deck stowage and pier stowage.

Although Special Term never reached the issue, United States Lines also seeks to avoid liability altogether because of plaintiff's failure to give written notice of the true character

and value of its travelers checks, as is required by section 181 of title 46 of the United States Code which, in pertinent part, provides: "If any shipper of * * * bills of any bank or public body * * * notes, or securities for payment of money, * * * printings * * * contained in any parcel, or package * * * shall lade the same as freight * * * on any vessel, without at the time of such lading giving to the master, clerk, agent, or owner of such vessel receiving the same a written notice of the true character and value thereof, and having the same entered on the bill of lading therefor, the master and owner of such vessel *shall not be liable as carriers* thereof in any form or manner; nor shall any such master or owner be liable for any such goods beyond the value and according to the character thereof so notified and entered." (Emphasis supplied.)

█ While plaintiff concedes that its travelers checks are within the category of cargo covered by the statute, it contends, and we agree, that section 181, where applicable, relieves the carrier from its liability only as a carrier, not as a bailee. (See *Wheeler v Oceanic Steam Nav. Co.,* 125 NY 155; *Reid v Luckenback S. S. Co.,* 133 Misc 21.) The theft here occurred while United States Lines was holding the goods as bailee.

█ In dismissing the complaint in its entirety against Sullivan, Special Term found as a matter of law that the proximate cause of plaintiff's loss was intervening armed robbery, not the failure to provide adequate security. Yet, Special Term failed to apply the same rationale to the third cause of action, alleging negligence on the part of the United States Lines as well. In any event, we believe that a factual question is presented, at the least, as to the reasonableness of defendants' actions in relation to the clearly known danger of theft, in their failure to keep valuable cargo under lock and key while on the pier, their deployment and utilization of the four guards, and their limited use of electronic alarm equipment on the pier. Insofar as Sullivan is concerned, its duty to provide security for United States Lines ran to plaintiff, which it served as a customer of United States Lines. (See *Glanzer v Shepard,* 233 NY 236.)

Finally, the fifth and sixth causes of action charging United States Lines with breach of warranty and fraudulent misrepresentation, respectively, should be dismissed. Although Special Term properly noted in its decision that they were with-

out factual support, the order entered upon that decision did not provide for their dismissal.

Accordingly, the order, Supreme Court, New York County (HELMAN, J.), entered October 30, 1978, which, *inter alia,* granted defendant United States Lines, Inc. partial summary judgment, should be modified, on the law, to vacate so much thereof as awarded United States Lines partial summary judgment limiting its liability to $1,000, and to dismiss the fifth and sixth causes of action of the second amended complaint and, except as thus modified, affirmed; and the order and judgment, Supreme Court, New York County (HELMAN, J.), entered October 30, 1978 and November 22, 1978, respectively, which, *inter alia,* granted defendant Sullivan Security Services, Inc.'s motion for summary judgment dismissing the second amended complaint against said defendant, should be reversed, on the law, the motion denied and the dismissed causes of action against defendant Sullivan reinstated, with one bill of costs to plaintiff.

Ross and LUPIANO, JJ., concur. SILVERMAN and BLOOM, JJ., dissent and would affirm for the reasons stated by HELMAN, J., at Trial Term.

Order, Supreme Court, New York County, entered on October 30, 1978, modified, on the law, to vacate so much thereof as awarded United States Lines partial summary judgment limiting its liability to $1,000, and to dismiss the fifth and sixth causes of action of the second amended complaint and, except as thus modified, affirmed; and the order and judgment, of said court, entered on October 30, 1978 and November 22, 1978, respectively, which, *inter alia,* granted defendant Sullivan Security Services, Inc.'s motion for summary judgment dismissing the second amended complaint against said defendant, is reversed, on the law, the motion denied and the dismissed causes of action against defendant Sullivan reinstated. Appellant shall recover of defendants-respondents, one bill of $75 costs and disbursements of this appeal.